Bill and Patricia BAKER, individually,
and on behalf of Amy Baker,
Plaintiffs and Appellants,

v.

Norman G. ANGUS, Executive Director,
Utah Department of Social Services;
Ron Stromberg, Director, Office of So-
cial Services; Earl W. Bassett, Regional
Director, Office of Social Services, Cen-
tral Region; Barbara Thompson, Di-
rector, Division of Family Services, Of-
fice of Social Services; Carolyn Thomas,
Case Worker Supervisor, Office of So-
cial Services, Central Region; Karen
Platt, Social Worker, Office of Social
Services, Central Region; Utah Youth
Village, aka Utah Girl's Village aka/
Girl's Village; Anthony Dougherty; and
Kimberly Dougherty, individually, De-
fendants and Appellees.

No. 950091–CA.

Court of Appeals of Utah.

Jan. 11, 1996.

Kathryn Collard, Salt Lake City, for Appellants.

Elizabeth King and Jan Graham, Salt Lake City, for Appellees.

Before DAVIS, BENCH and BILLINGS, JJ.

BENCH, Judge:

The Bakers appeal from the trial court's dismissal of their complaint against certain state employees pursuant to Utah Rule of Civil Procedure 12(b)(6). We reverse in part, and affirm in part.

## FACTS

In view of the procedural posture of this case, we recite the facts in a light most favorable to the Bakers. *See St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991).

Amy Baker, a minor, suffered from emotional and mental conditions that led to several episodes of extreme hostility and her

running away from home. Amy's parents did not have adequate financial resources to properly monitor and supervise Amy. Apparently as the result of a juvenile court order, the Bakers placed Amy in the temporary custody of the Utah Division of Family Services (DFS). Defendant Karen Platt, Amy's assigned DFS social worker, placed Amy in the Utah Girl's Village (UGV), a residential group facility in Pleasant Grove, Utah. Utah Youth Village, a nonprofit corporation under contract with DFS, administers and manages UGV.[1]

Amy ran away from UGV several times. The first time, Amy was apprehended by the police. She struck an officer and was charged with assault. Subsequently, Amy was hospitalized and medicated until her condition stabilized. After her hospitalization, Amy was returned to UGV, where defendants Anthony and Kimberly Dougherty, the "house parents" at UGV, refused to provide Amy with her prescribed psychiatric medications. The Bakers contacted Platt who stated that she had not been monitoring Amy's situation at UGV and was unaware that her medication was not being administered to her.

Later, during a four-day period, Amy attempted suicide twice and ran away six times for prolonged periods of time, wandering about Pleasant Grove and Provo. In one such episode, Amy was again apprehended by the police. Upon instructions from the Doughertys, the police released Amy to return to UGV on her own. Within a day or two, the Doughertys called Mrs. Baker asking if she had seen Amy because she had run away from UGV again. They told Mrs. Baker that they had not searched for her because Platt had previously told them not to. The Doughertys also did not document or report Amy's activities to anyone during this time. Mrs. Baker attempted to telephone Platt but was unable to reach her, and Platt did not return her calls. Neither DFS or UGV had informed the Bakers of Amy's most recent attempted suicides or of her several unapproved excursions away from UGV.

Two days later, the Bakers received a telephone call informing them that Amy was in the Utah Valley Hospital and that she had been raped. Following these events, the Bakers contacted the state defendants and requested new case workers for Amy and, further, requested that they investigate Amy's situation. The state defendants refused the Bakers' requests.

The Bakers filed suit pursuant to 42 U.S.C.A. §§ 1983 and 1988 (1994), alleging that defendants deprived them and their daughter Amy of their constitutional rights under color of law. They sued each of the defendants in their individual and corporate capacities for "intentional, malicious, deliberately indifferent and/or grossly negligent deprivation of Amy Baker's substantive rights to reasonable and adequate conditions of confinement, care and treatment." The Bakers also claim that they were denied their freedom of speech, access to courts, and "their rights as parents of a handicapped and mentally ill child in state custody, under the federal and state constitutions and laws."

The state defendants filed a Motion to Dismiss, and the remaining defendants filed an Answer to the Bakers' Complaint. The trial court granted the state defendants' Motion to Dismiss for three reasons. First, the trial court determined that the Bakers' action "failed to state a cognizable claim for relief under 42 U.S.C. § 1983. . . ." Second, the trial court determined that the Utah Government Immunity Act barred the Bakers' claims. Third, the trial court found that the Bakers' claims were subject to the notice requirements of the Utah Health Care Malpractice Act.[2]

The Bakers filed a Notice of Appeal with the Utah Supreme Court after receiving a Rule 54(b) certification of the dismissal from the trial court. Utah R.Civ.P. 54(b). The supreme court transferred the case to this

---

1. Utah Youth Village and several of its employees were also named defendants in this suit. This appeal, however, pertains only to the state defendants.

2. The trial court found that the Bakers had not complied with that act's requirement that plaintiffs give defendants timely notice of intent to file an action. *See* Utah Code Ann. § 78–14–8 (1992).

court pursuant to Rule 42 of the Utah Rules of Appellate Procedure.

## ISSUE

Did the trial court err in dismissing the Bakers' complaint against the state defendants, pursuant to Rule 12(b)(6) of the Utah Rules of Civil Procedure?

## STANDARD OF REVIEW

■ When reviewing a motion to dismiss based on Rule 12(b)(6), an appellate court must accept the material allegations of the complaint as true. *Anderson v. Dean Witter Reynolds, Inc.*, 841 P.2d 742, 744 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993). We construe the facts in the complaint liberally and we consider all the reasonable inferences to be drawn from the facts in a light most favorable to the plaintiffs. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). A motion to dismiss is appropriate only where it clearly appears that the plaintiffs would not be entitled to relief under the facts alleged or under any set of facts they could prove to support their claim. *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990). Because the propriety of a 12(b)(6) dismissal is a question of law, "we give the trial court's ruling no deference and review it under a correctness standard." *Anderson*, 841 P.2d at 744 (quoting *St. Benedict's*, 811 P.2d at 196).

## ANALYSIS

The trial court found that, as to the state defendants, the Bakers' complaint did not adequately state a claim for relief under 42 U.S.C. § 1983. To state a section 1983 claim, plaintiffs must allege two elements: (i) that they have been deprived of a right secured by the Constitution and laws of the United States; and (ii) that the plaintiffs' deprivation resulted from defendants' actions under color of law. *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir.1988). The Bakers claim that the state defendants have deprived them of their rights protected by the Fourteenth Amendment to the United States Constitu-

tion. The Bakers also claim that the state defendants violated their civil rights created by the following federal statutes: the Education for all Handicapped Children Act, the Adoption Assistance and Child Welfare Act, the Rehabilitation Act, the Child Abuse Prevention and Treatment Act, and the Social Security Act. Finally, the Bakers claim that the state defendants violated their civil rights under parallel provisions of the Utah Constitution and "state laws and regulations implementing the foregoing federal laws and per se creating rights and entitlements of children in state custody."

### A. Constitutional Claims

The Bakers allege several violations of their constitutional rights including violation of their freedom of speech, denial of their access to courts, and deprivation of substantive and procedural due process rights. Since both parties briefed only the Fourteenth Amendment claims, we address only those issues. *See State v. Brown*, 853 P.2d 851, 854 n. 1 (Utah 1992) (noting that because party did not brief constitutional issue, court would not review it).

■ Although the Constitution does not generally require governments affirmatively to provide services and care, certain affirmative duties arise from the Constitution when the plaintiff is in government custody. *Youngberg v. Romeo*, 457 U.S. 307, 320–24, 102 S.Ct. 2452, 2460–62, 73 L.Ed.2d 28 (1982) (declaring involuntary commitment to state institution for mentally impaired gives rise to constitutional rights to services and care); *see also K.H. v. Morgan*, 914 F.2d 846, 848–49 (7th Cir.1990) (holding foster children have substantive due process right to be free from harm while in foster care). Fourteenth Amendment violations occur when those who are in government custody are not afforded safe conditions of confinement or, for those who need it, "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *Youngberg*, 457 U.S. at 319, 102 S.Ct. at 2459–60. The Bakers posture their constitutional claim against the state defendants on the theory that they had supervisory liability for Amy's safety.

■ The state defendants contend that the Bakers' complaint alleges respondeat superior liability by the state defendants. Because there is no respondeat superior liability actionable under section 1983, the state defendants argue that the Bakers' section 1983 action fails and was properly dismissed against them. However, the Bakers' complaint alleges that the state defendants acted in a supervisory role, which is actionable under section 1983. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Supervisory liability attaches when officials

> who have not been directly involved in the deprivation itself fail to take action which they are required to take to stop the violations of their subordinates in a manner which amounts to deliberate indifference ... or when they create policies and practices pursuant to which the constitutional deprivation was carried out.

*Jeanine B. v. Thompson*, 877 F.Supp. 1268, 1278 (E.D.Wis.1995). The Bakers allege that the state defendants showed "deliberate indifference" and mishandled Amy's case by not adequately training and supervising their subordinates.

This standard is particularly important regarding state defendants Angus, Stromberg, Bassett, and Thompson because the Bakers must show that these defendants knew about, and participated in, a systemic breakdown of training and procedures required by statute that denied Amy her constitutional rights. Furthermore, the Bakers must show that these particular state defendants, acting in their individual capacities, showed a systemic pattern of deliberate indifference to any serious medical needs of Amy. *Ramos v. Lamm*, 639 F.2d 559, 574–75 (10th Cir.1980) (holding systemic and gross deficiencies in staffing, facilities, equipment, or procedures caused prisoners to be "denied adequate ac-

cess to medical care"); *Jeanine B.*, 877 F.Supp. at 1277–78 (holding dismissal improper when state defendants knew of continued systemic failures without acting to remedy problems).

■ While reading the complaint as a respondeat superior claim appears to be reasonable, we cannot affirm the trial court's dismissal on this basis. *See Butler v. Commissioner of Mental Health*, 463 F.Supp. 806, 808 (E.D.Tenn.1978) (court reviewing 12(b)(6) motion in section 1983 action must accept any reasonable interpretation of plaintiff's claims). Accordingly, reading the complaint in the light most favorable to the Bakers, it can be reasonably interpreted to be a claim of direct personal responsibility on the part of the named state defendants. *St. Benedict's*, 811 P.2d at 196. Thus, the state defendants' respondeat superior argument fails at this stage of the proceedings.[3]

### B. Federal Statutes

■ The Bakers allege that the state defendants violated their civil rights based on federal statutory provisions. To determine if a statute creates a federal right enforceable under section 1983, the statutory provision must be "intended to benefit the plaintiff." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (citations omitted). Furthermore, no civil right is created if the statute merely reflects a "congressional preference" for a certain type of conduct or if the asserted right is "too vague and amorphous" for the courts to enforce. *Id.* "Once plaintiffs have pointed to a substantive provision of rights, privileges, or immunities, the defendants bear the burden of establishing that 'Congress intended to preclude reliance on section 1983 as a remedy for the deprivation of a federal secured right.'" *Jeanine B.*, 877 F.Supp. at 1282 (quoting *Wright v. Roanoke*

**3.** The state defendants also assert that the "professional judgment" standard should preclude the Bakers' claims. *See Youngberg v. Romeo*, 457 U.S. 307, 321–22, 102 S.Ct. 2452, 2461–62, 73 L.Ed.2d 28 (1982) (holding professional decisions presumed valid unless shown to depart substantially "from accepted professional judgment, practice, or standards....") The state defendants also argue that they are protected by

qualified immunity. However, both of these arguments were presented for the first time in the state defendants' brief on appeal. With limited exceptions, our practice has been to decline consideration of issues raised for the first time on appeal. *Espinal v. Salt Lake City Bd. of Educ.*, 797 P.2d 412, 413 (Utah 1990). This case does not fit within those limited exceptions.

*Redev. & Hous. Auth.,* 479 U.S. 418, 423–24, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)). "Courts 'do not lightly conclude' such preclusion." *Id.*

■ The state defendants argue that the Bakers have not specifically enumerated the state defendants' alleged violations and how those violations correlate to specific statutory provisions as was done in *Jeanine B.* Admittedly, the Bakers' complaint is not a model of specificity in outlining the individual statutory provisions that establish the Bakers' civil rights or the specific actions by the state defendants violating those rights. However, Rule 8(a) of the Utah Rules of Civil Procedure provides only that "[a] pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief." Utah R.Civ.P. 8(a); *see Gill v. Timm,* 720 P.2d 1352, 1353 (Utah 1986) (holding rule 8(a) to be liberally construed when determining the sufficiency of plaintiff's complaint). The Bakers are therefore not required in their complaint to provide an in-depth statutory analysis with an accompanying expansive narrative of the state defendants' alleged violations. The Bakers list several federal statutes and their provisions from which rights could be possibly derived. We cannot say that the Bakers would never be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim. *See Colman,* 795 P.2d at 624. To survive dismissal, the Bakers need only allege sufficient facts that can reasonably be argued and that cannot, as a matter of law, be dismissed. *See id.* We therefore reverse the trial court's dismissal of the Bakers' section 1983 claims.

## C. Government Immunity Act and Utah Health Care Malpractice Act

■ The state defendants argue that the Utah Government Immunity Act bars the Bakers' action against them. The Bakers contend that the Government Immunity Act does not apply in this case because state immunity doctrines do not defeat liability in section 1983 actions. In general, state government immunity statutes do not apply to suits brought under 42 U.S.C. § 1983. *Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988). In *Felder,* the Supreme Court held

> that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy ... which of course already provides certain immunities for state officials.

*Id.* Moreover, the Bakers argue that they have sufficiently pleaded that the state defendants in their individual capacities as opposed to their official capacities, acted maliciously so as to exempt application of the Government Immunity Act. *See* Utah Code Ann. § 63–30–4 (1993).[4] The state defendants argue that the Bakers did not allege malice or fraud on the part of the state defendants.

However, the complaint, when viewed in a light most favorable to the Bakers, alleges several instances in which state defendant Platt's actions could be construed to rise to the level of malice. For example, Platt reportedly threatened to terminate DFS custody over Amy if the Bakers pursued an investigation. Defendant Platt did not report Amy's attempted suicides and seemed hostile towards Amy. The Bakers also allege that Platt told others "that Amy was manipulative and that she was lying about being raped." The complaint also alleges that state defendant Carolyn Thomas was malicious in refusing to investigate Amy's situation, or to consider assigning Amy a new caseworker. The Bakers further allege that the rest of the

---

4. Section 63–30–4(4) provides:
   An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee may be held personally liable for acts or omissions occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, unless it is established that the employee acted or failed to act due to *fraud or malice.*
   (Emphasis added.)

state defendants acted maliciously in either making bad regulations, or poorly training the employees of DFS. These allegations of malice may be difficult to prove, particularly as to state defendants Angus, Stromberg, Bassett, and Thompson. However, given the posture of this case, we cannot say, as a matter law, that the Bakers will not be able to prove facts to support their claims. *See Anderson*, 841 P.2d at 744; *Richards Irr. Co. v. Karren*, 880 P.2d 6, 10 (Utah App.1994).

Insofar as the Bakers claim simple negligence against the state defendants, the Government Immunity Act precludes the claim pursuant to its Exclusive Remedy Provision. *See* Utah Code Ann. § 63–30–4(3)–(4) (1993); *see also Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337, 1340 (Utah 1987) (declaring negligence-based claims brought under section 1983 barred by section 63–30–10). In addition, the Bakers have failed to meet the notice requirements of the Utah Health Care Malpractice Act, which requires plaintiffs to give notice of intent to commence an action at least ninety days prior to filing a complaint. *See* Utah Code Ann. § 78–14–8 (1992). Therefore we can definitely hold, as a matter of law, that any claims of simple negligence are barred. Accordingly, the trial court's dismissal of any negligence claims is affirmed.

## CONCLUSION

The trial court erred in dismissing the Bakers' section 1983 claims because the Bakers have made allegations sufficient to support their claims. The trial court correctly dismissed the Bakers' negligence claims because they cannot survive the tandem of the Government Immunity Act and the Health Care Malpractice Act.

Reversed in part, and affirmed in part.

DAVIS, Associate P.J., and BILLINGS, J., concur.