2002 UT App 271

**BANK ONE UTAH, N.A., Plaintiff and Appellant,**

v.

**WEST JORDAN CITY, Defendant and Appellee.**

No. 20000785–CA.

Court of Appeals of Utah.

Aug. 15, 2002.

Arnold Richer and Mark E. Medcalf, Richer Swan & Overholt, Midvale, for Appellant.

Kevin R. Watkins, Kaysville, Ryan B. Carter, and Stuart E. Williams, West Jordan City Prosecutor, and Ronald C. Wolthuis, Bugden & Isaacson LLC, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

OPINION

ORME, Judge:

¶ 1 Bank One appeals the summary judgment in favor of West Jordan City, which judgment was premised on the conclusion that the bank's statutorily required notice of claim was not timely filed. Bank One contends it did not have a reason to initiate a claim against West Jordan until it knew of West Jordan's responsibility for the bank's injury and the amount of its damages. We reverse.

## FACTUAL BACKGROUND

¶2 "In reviewing a grant of summary judgment, we review the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Regal Ins. Co. v. Bott*, 2001 UT 71, ¶2, 31 P.3d 524.

¶3 Working to install a fiber optic conduit in West Jordan, Upper Valley Utilities (UVU) conducted drilling activities in early March 1999 in front of a building owned and occupied by Bank One. Prior to initiating its drilling, UVU contacted the Blue Stakes Location Center to have the utilities in the area marked. Blue Stakes contacted West Jordan and informed it of the installation and the need to have its utility lines marked. West Jordan was then required to properly mark the utility lines in the area to be excavated. *See* Utah Code Ann. § 54-8a-5 (1999). West Jordan was negligent in the marking of its sewer line, and as a result, UVU drilled into the sewer line that services Bank One's facility.

¶4 A few days later, Bank One began having problems with the operation of its restrooms. Believing the sewer line to be merely clogged, Bank One reported the problems it was having to West Jordan. On March 15, 1999, a West Jordan representative inspected the sewer line and reported that he was unable to find any malfunction or problem with the line.

¶5 Left with inoperative restrooms, Bank One hired a private contractor to identify the source of the plumbing problems. On March 22, 1999, the private contractor discovered that the West Jordan sewer line servicing Bank One had been punctured. That same day, representatives of UVU and West Jordan met with representatives of Bank One to inspect the punctured sewer line, discuss the cause of the damage, and determine which party should pay for the repairs. At that meeting, both West Jordan and UVU, apparently blaming each other, denied responsibility for Bank One's damage and refused to pay for repairs. Due to the refusal of both West Jordan and UVU to repair the damaged sewer line, Bank One was forced to retain the services of a private contractor, who repaired the sewer line at Bank One's expense on about April 1, 1999.

¶6 On September 27, 1999, Bank One commenced this action against UVU and West Jordan seeking recovery of the $29,986.49 it paid to have the sewer line repaired. West Jordan defended by asserting, among other things, that Bank One had failed to file a notice of claim as required by the Utah Governmental Immunity Act, Utah Code Ann. § 63-30-13 (1997). Bank One then filed its notice of claim on March 22, 2000. Two months later, the trial court ruled that West Jordan's failure to properly mark the sewer line absolved UVU of liability and granted UVU's motion for summary judgment. The trial court then determined that Bank One's cause of action accrued on March 15, 1999, when Bank One first observed its toilets malfunctioning. Accordingly, the court concluded that Bank One filed its notice of claim "more than one year after the claim arose" and granted West Jordan's motion for summary judgment. Bank One appeals.

## ISSUE AND STANDARD OF REVIEW

¶7 Bank One argues that the trial court erred in concluding that its claim against West Jordan accrued on March 15, 1999, and in subsequently granting West Jordan's motion for summary judgment. "In reviewing a grant of summary judgment, this court views 'the facts in a light most favorable to the losing party below' and gives 'no deference to the trial court's conclusions of law: those conclusions are reviewed for correctness.'" *Goodnow v. Sullivan*, 2002 UT 21, ¶7, 44 P.3d 704 (quoting *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 636-37 (Utah 1989)).

## ANALYSIS

¶8 "Limitation periods begin to run when a cause of action has accrued, which 'occurs upon the happening of the last event necessary to complete the cause of action.'" *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 252 (Utah Ct.App.1993) (quoting *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983)). The parties disagree about what that last event was. West Jordan contends that Bank One's claim accrued

when Bank One discovered that its restrooms were not operating properly. Bank One counters that its claim against West Jordan could not have accrued prior to its payment for the necessary repairs, which established its damages. Thus, the appeal turns on whether the one-year period in which Bank One was required to file its notice of claim with West Jordan began to run when the injury occurred, i.e., when the toilets first malfunctioned, or at some later date.

■ ¶ 9 As a general matter, " ' "where statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent. Rather, we are guided by the rule that a statute should generally be construed according to its plain language." ' " *Sorenson Ranch School v. Oram,* 2001 UT App 354, ¶ 8, 36 P.3d 528 (citations omitted). Therefore, the particular language used in a statute setting a limitation period has proved critical to proper interpretation of the statute. *See McDougal v. Weed,* 945 P.2d 175, 177 & n. 1 (Utah Ct.App. 1997); *Aragon,* 857 P.2d at 252–53.

¶ 10 In *McDougal,* we interpreted the language of the Utah Healthcare Malpractice Act, Utah Code Ann. § 78–14–4 (1996), which provided in relevant part as follows:

"No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the *injury,* whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence...."

*McDougal,* 945 P.2d at 176–77 (quoting Utah Code Ann. § 78–14–4 (1996)) (emphasis in original). At issue in that case was whether the "statute of limitations [was] tolled until the time the plaintiff discover[ed], or through the use of reasonable diligence should have discovered, both the existence of the recoverable injury *and* the defendant's identity." *Id.* at 176 (emphasis in original). We concluded that section 78–14–4 did "not require that the statute of limitations be tolled until the identity of the tortfeasor [had been] discovered or should have been discovered." *Id.* at 177. This was because "the [relevant]

statutory language clearly set[ ] the moment the 'patient discovers ... the *injury*' as the triggering moment for the limitations period." *Id.* (quoting Utah Code Ann. § 78–14–4(1) (1996)) (emphasis added). Thus, by its plain language, the statute made clear that identifying the party responsible for the injury was not a prerequisite to the limitation period beginning to run.

¶ 11 However, in *Aragon,* the language of the applicable statute compelled a different conclusion. Unlike the statute at issue in *McDougal,* the statute considered in *Aragon,* which set the limitation period for filing products liability actions, provided:

"A civil action under this chapter shall be brought within two years from the time the individual who would be the claimant in such action discovered, or in the exercise of due diligence should have discovered, *both the harm and its cause.*"

*Aragon,* 857 P.2d at 252 (quoting Utah Code Ann. § 78–15–3 (1992)) (emphasis added). We interpreted the Legislature's inclusion of the phrase "and its cause" as indicating that the statute of limitations would not start to run "until the plaintiff discovers, or in the exercise of due diligence should have discovered, the identity of the [tortfeasor]." *Id.* at 253. We reasoned that lacking such information, a plaintiff could not know the cause of his or her injury.

■ ¶ 12 We follow the same statute-specific approach in this case and focus on the exact language used. The relevant part of section 63–30–13, which "operate[s] as a one-year statute of limitations in cases brought against a governmental entity," *Warren v. Provo City Corp.,* 838 P.2d 1125, 1128 (Utah 1992), provides:

A claim against a *political subdivision,* or against its employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the governing body of the political subdivision within one year after the claim arises....

Utah Code Ann. § 63–30–13 (1997) (emphasis added). Obviously, a party cannot have a legitimate "claim" against a governmental entity until it is aware that the governmental entity's action or inaction has resulted in

some kind of harm to its interests. Only then does it have not just a gripe against parties unknown, but a "claim" against a particular governmental entity.[1]

¶ 13 The trial court in this case reached the conclusion that Bank One's claim arose on March 15, 1999. Our review of the record suggests otherwise. While Bank One began having trouble with its restrooms on March 15, 1999, it reasonably assumed the problem to be the product of clogging or some other internal plumbing problem. It did not see a link between its malfunctioning toilets and the drilling that occurred days before on a public street. More importantly, at that point it had absolutely no reason to suspect that West Jordan had negligently marked the utilities and that this negligence precipitated the problems Bank One was having. This is especially true given West Jordan's report to Bank One that its inspection of the sewer line on March 15, 1999, disclosed no problems. Thus, Bank One did not have a claim against West Jordan, for purposes of section 63–30–13, on March 15, 1999.

¶ 14 However, circumstances changed dramatically a week later. On March 22, a contractor made Bank One aware that its restroom problems were the result of the sewer line being punctured by the recent drilling. While it is not completely clear from either the record or the parties' arguments, it also appears that it was at the March 22 meeting that Bank One became aware, for the first time, that West Jordan was responsible for marking all utilities prior to UVU's excavation. It is only at the point when Bank One learned this, and of UVU's denial of responsibility, that the bank had any reason to know it had a claim that could legitimately be asserted against West Jordan. Thus, West Jordan's contention that Bank One's claim accrued on March 15, 1999, fails.

¶ 15 Bank One contends that its claim did not accrue until April 1, 2000, when it paid for the repairs done to the sewer line. We disagree. On March 22, 1999, Bank One was aware that its property had been harmed by the negligently handled drilling work. Moreover, Bank One had become aware of the fact that West Jordan was responsible for properly marking the lines prior to excavation and that UVU denied it was at fault. While it was not clear on March 22, 1999, how much it would cost to repair the damaged sewer line, and thus the exact amount of Bank One's damages was not yet established, all the events necessary to complete the claim had occurred by that date. *See* Utah Code Ann. § 63–30–11(3)(a)(iii) (Supp.1998) (indicating that notice of claim need not contain exact amount of damages, but only "the damages incurred by the claimant so far as they are known").

¶ 16 Our recognition of March 22, 1999, as the date that Bank One can meaningfully be said to have first had a claim against West Jordan places Bank One's March 22, 2000,

---

1. Our holding here is supported by *Vincent v. Salt Lake County*, 583 P.2d 105 (Utah 1978), decided under a prior version of section 63–30–13. *See* Utah Code Ann. § 63–30–13 (1968) ("A claim against a political subdivision shall be forever barred unless notice thereof is filed within ninety days after the cause of action arises[.]").

   In *Vincent*, the plaintiffs sued Salt Lake County for damage to their garage caused by a leaking storm drain. *See id.* at 106. Over a period of years, Mr. Vincent contacted Salt Lake County Flood Control three times about cracks in his garage wall, wondering if they might have been caused by the storm drain. *See id.* After each of his first two calls, the County inspected the drain and informed Mr. Vincent there was no correlation between the drain and the widening cracks in the Vincents' garage. *See id.* The third time Mr. Vincent contacted the County, he again "was given 'no satisfaction.'" *Id.* Mr. Vincent then hired a contractor who excavated and discovered that the storm drain was leaking and was indeed

the cause of the Vincents' problems. *See id.* The Vincents then filed a notice of claim with the County. *See id.*

   In response to the County's assertion on appeal that the Vincents' notice was filed beyond the limitation period, the Supreme Court observed that "no cause of action arose until plaintiffs actually discovered the storm drain was leaking water underneath the garage foundation." *Id.* at 107. The Court stated:

   [I]t is incongruous to require plaintiffs to commence an action against the county when the cause of the damage is unknown to plaintiffs, and they have reasonably relied to their detriment upon the county's false representations regarding the leaking pipe.

*Id.* at 107. The factual similarities between *Vincent* and the instant case are obvious, and, although decided under a previous version of section 63–30–13, *Vincent's* holding squarely supports our decision here.

filing of its notice of claim just within section 63–30–13's one-year filing deadline.[2] *See* Utah R. Civ. P. 6(a) ("In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday."). Accordingly, the trial court erred in concluding that Bank One's March 22, 2000, filing of its notice of claim was untimely.

## CONCLUSION

¶ 17 A potential plaintiff does not have a claim against a political subdivision until it becomes aware that the entity has in some way harmed the plaintiff. Accordingly, Bank One did not have a claim against West Jordan until at least March 22, 1999, when Bank One became aware of the fact that its plumbing problems had quite possibly been caused by West Jordan's failure to properly mark its sewer line. Therefore, we conclude that Bank One's March 22, 2000, filing was timely. Accordingly, we reverse the summary judgment against Bank One and remand for trial or such other proceedings as may now be appropriate.

¶ 18 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and JAMES Z. DAVIS, Judge.

---

2. The Utah Governmental Immunity Act does not actually contemplate the filing of a notice of claim *after* one's complaint has already been served upon the governmental entity, as happened here. *See* Utah Code Ann. § 63–30–13 (1997). Instead, it contemplates filing the notice of claim in advance of litigation, thus affording " 'the responsible public authorities an opportunity to pursue a proper and timely investigation of the merits of a claim and to arrive at a timely settlement, if appropriate, thereby avoiding the expenditure of public revenue for costly and unnecessary litigation.' " *Brittain v. State*, 882 P.2d 666, 671 (Utah Ct.App.1994) (quoting *Stahl v.* *Utah Transit Auth.*, 618 P.2d 480, 482 (Utah 1980)). However, on appeal, West Jordan does not contend that where a notice of claim has been filed within the one-year time period allowed, filing of a complaint prior to the filing of a notice of claim is a bar to the action. Bank One points to *Johnson v. Utah State Retirement Office*, 621 P.2d 1234 (Utah 1980), in support of its contention that despite the valuable purposes served by filing a notice of claim before a complaint is served, failure to do so is not fatal to a claim so long as the proper notice is filed within the one-year period. *See id.* at 1236.