2003 UT App 355

**Bradley D. JONES, Plaintiff and Appellant,**

v.

**SALT LAKE CITY CORPORATION, et al., Defendants and Appellees.**

No. 20020941–CA.

Court of Appeals of Utah.

Oct. 17, 2003.

Rehearing Denied Nov. 7, 2003.

Scott B. Mitchell, Salt Lake City, for Appellant.

J. Wesley Robinson, Salt Lake City Law Department, Salt Lake City, for Appellees.

Before BILLINGS, Associate Presiding Judge, and BENCH and DAVIS, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 Bradley Jones appeals the trial court's order denying his motion for partial summary judgment and granting Salt Lake City's motion for summary judgment. Jones also appeals the trial court's order denying Jones's motion for leave to file a second amended complaint. We affirm.

## BACKGROUND

¶ 2 In March 1997, Defendant Salt Lake City (the City) seized a number of firearms in connection with Jones's arrest on an explosives charge. Jones pleaded guilty to a third degree felony of Recklessness—Incendiary Device Parts in August 1997. On October 24, 1997, the Honorable Glenn Iwasaki issued an order as follows: "It is hereby ordered that the firearms seized at the time of [Jones's] arrest be turned over to a licensed firearms dealer, to be sold at current market value, and the proceeds to be returned to [Jones] through his counsel." Notwithstanding this order, on February 9, 1998, pursuant to the authorization of Officer Kelly Kent of the Salt Lake City Police Department, the City destroyed the firearms.[1]

¶ 3 Jones's former attorney made considerable efforts to obtain compliance with Judge Iwasaki's order. In December 1998, Jones's former attorney instructed his law clerk, Jeff Tachiki, to look into the matter of Jones's firearms. Tachiki made several calls to the Salt Lake County District Attorney's office before being referred to Sergeant Jack Rickards (Sgt.Rickards) of the Salt Lake City Police Department. On January 14, 1999, Tachiki provided Sgt. Rickards a copy of Judge Iwasaki's order. Sgt. Rickards indicated the weapons could be claimed if the District Attorney signed a release for the firearms. Tachiki obtained the release and provided it to Sgt. Rickards on March 3, 1999, at which time Sgt. Rickards informed Tachiki the firearms were on a list to be destroyed. In a telephone call to Tachiki on March 16, 1999, Sgt. Rickards confirmed the

1. Jones does not contend that the City had knowledge of this order when it destroyed the firearms.

firearms had been destroyed. Jones served the City with a notice of claim on March 2, 2000, and filed suit against the City on February 27, 2001, asserting claims against the City for conversion of the firearms and for depriving Jones of his property without due process of law.

¶ 4 On June 18, 2001, the trial court signed a scheduling order which provided a cutoff date for amendment of pleadings of July 15, 2001, and declared that "fact discovery shall be completed no later than September 30, 2001." On July 11, 2001, Jones filed his first amended complaint, which added the Salt Lake County District Attorney as a defendant. The District Attorney was later dismissed as a party.

¶ 5 Jones filed a motion for partial summary judgment in September 2001 regarding his claims for conversion and deprivation of due process. The City filed its motion for summary judgment in November 2001, alleging, inter alia, that Jones did not state a cognizable claim for conversion. On June 24, 2002, the City filed a memorandum in opposition to Jones's motion for partial summary judgment in which the City argued that Jones failed to allege a cause of action under 42 U.S.C. § 1983 because he did not allege the due process violation "was the result of any custom or policy of the city." The City also argued, inter alia, that Jones did not make a cognizable claim for a violation of due process. Twenty-one days later, Jones filed a motion for leave to file a second amended complaint wherein he sought to "remedy any alleged pleading defects" in the first amended complaint "with respect to his § 1983 claim against the city" and "add Officer Kelly

Kent as a defendant." On September 3, 2002, the trial court denied this motion.

¶ 6 After hearing arguments on all remaining issues, the trial court denied Jones's motion for partial summary judgment and granted the City's motion for summary judgment. Jones appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Jones argues the trial court erred in dismissing, at summary judgment, his conversion and due process claims against the City. "Summary judgment is proper solely in cases in which no genuine issues of material fact exist and the movant merits judgment as a matter of law." *Smith Inv. Co. v. Sandy City,* 958 P.2d 245, 251 (Utah Ct.App.1998). "We accord no deference to the trial court's legal conclusions, reviewing them for correctness." *Id.* at 251. Jones also argues the trial court improperly denied his motion to amend his complaint. We will not disturb the trial court's ruling absent "an abuse of discretion resulting in prejudice." *Nunez v. Albo,* 2002 UT App 247,¶ 10, 53 P.3d 2 (quotations and citation omitted).

## ANALYSIS

### I. Conversion

¶ 8 Jones argues the trial court incorrectly dismissed his conversion claim against the City. Although the trial court found that Jones did not comply with notice requirements under the Utah Governmental Immunity Act, *see* Utah Code Ann. § 63–30–13 (1997), we instead affirm on the grounds that Jones does not state a legal claim for conversion.[2]

---

2. Jones argues his conversion claim did not accrue until March 16, 1999, when the City officially informed Jones his firearms were destroyed. We agree.

Under the Utah Governmental Immunity Act, a cause of action does not even accrue until a party is aware that the governmental entity's action has harmed its interests. *See Bank One Utah v. West Jordan City,* 2002 UT App 271,¶ 12, 54 P.3d 135. In *Bank One Utah,* we interpreted the language of the Utah Governmental Immunity Act, Utah Code Annotated § 63–30–13 (1997), which provides: "A claim against a political subdivision, or against its employee ... is barred unless notice of claim is filed with the governing

body of the political subdivision within one year after the claim arises...." *Id.* (quoting Utah Code Ann. § 63–30–13). At issue in that case was whether the one-year period in which Bank One was required to serve its Notice of Claim on West Jordan began to run when Bank One's toilets malfunctioned or when Bank One was first informed that the West Jordan sewer line servicing Bank One had been punctured. *See id.* at ¶ 8. We stated:

Obviously, a party cannot have a legitimate "claim" against a governmental entity until it is aware that the governmental entity's action or inaction has resulted in some kind of harm to its interests. Only then does it have not just

¶ 9 Jones claims the City's destruction of his firearms interfered with his right to "*control* [them], i.e., have them sold by a licensed firearms dealer." (Emphasis added.) This falls short of conversion. " 'A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.' " *Fibro Trust, Inc. v. Brahman Fin., Inc.,* 1999 UT 13, ¶ 20, 974 P.2d 288 (quoting *Allred v. Hinkley,* 8 Utah 2d 73, 328 P.2d 726, 728 (1958)). Specifically, "a party alleging conversion must show that he or she is entitled to *immediate possession* of the property at the time of the alleged conversion." *Fibro Trust,* 1999 UT 13 at ¶ 20, 974 P.2d 288 (emphasis added); *see* Restatement (Second) of Torts § 226 (1965) ("One who intentionally destroys a chattel ... is subject to liability for conversion to another who is in possession of the chattel or entitled to its immediate possession.").

¶ 10 Although Judge Iwasaki's order gave Jones a right to the proceeds from the sale of the firearms, Jones concedes that his previous conviction of a violent crime precluded him from legally possessing or owning the firearms when they were destroyed. *See* Utah Code Ann. § 76–10–503(1)(a) (1999) ("Any person who has been convicted of any crime of violence ... may not own or have in his possession ... any dangerous weapon[.]").[3] Thus, Jones's conversion claim fails as a matter of law. *Cf. Wichita Falls v. ITT Comm. Fin. Corp.,* 827 S.W.2d 6, 7, 9–10 (Tex.App.1992) (concluding that although plaintiff city had a right to tax proceeds and judicial foreclosure of forty autos at the time of the alleged conversion, plaintiff had no ownership or possessory rights in the autos and thus had no legal claim for conversion).[4]

## II. Failure to Properly Plead 42 U.S.C. § 1983 Claim

¶ 11 Jones insists the trial court erred in finding that Jones "failed to properly allege a valid federal cause of action against the city pursuant to" 42 U.S.C. § 1983 (1999).

¶ 12 A § 1983 claim against a municipality must allege a deprivation of a right secured by the Constitution and laws of the United States that resulted from the municipality's actions "under color of law." *Baker v. Angus,* 910 P.2d 427, 430 (Utah Ct.App.1996). A municipality's actions do not fall under color of law unless its employee(s) "acted according to a law, custom, or usage known to and acquiesced in or condoned by the municipality." *J.H. v. West Valley City,* 840 P.2d 115, 120 (Utah 1992); *see Monell v. New York Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

¶ 13 Although Utah courts have not previously addressed the minimum wording required for alleging a custom or policy violation in a complaint, other courts at a minimum require "a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621,

---

a gripe against parties unknown, but a "claim" against a particular governmental entity.
*Id.* at ¶ 12. We concluded Bank One's cause of action did not accrue against West Jordan until Bank One became aware that its plumbing problems may have been caused by West Jordan failing to properly mark its sewer line. *See id.* at ¶ 17.

Similarly, Jones could not have known that he had a claim against the City until March 3, 1999, when he was informed that the City might have destroyed his firearms. Jones filed his Notice of Claim on March 2, 2000, within a year of when his claim arose. Thus, the trial court erred in finding that Jones failed to timely serve his Notice of Claim on the City in compliance with the Utah Governmental Immunity Act.

3. The City destroyed the firearms in February 1998. For convenience however, we cite the 1999 version of Utah Code Annotated section 76–10–503, which in 1999 remained unchanged in relevant portions. Section 76–10–503 was repealed and reenacted effective May 1, 2000. *See* Utah Code Ann. § 76–10–503 (Supp.2003) (Repeals and Reenactments Notes).

4. Jones does not and cannot claim conversion of the *proceeds* from the firearms. Although "[m]oney may be the subject of conversion," it is so only "when the party charged wrongfully received it." *State v. Twitchell,* 832 P.2d 866, 870 (Utah Ct.App.1992). Here, Jones does not claim the firearms were ever sold or that the City received any proceeds.

624 (9th Cir.1988); *see Mulleneaux v. State*, 190 Ariz. 535, 950 P.2d 1156, 1160 (Ct.App. 1997) (applying same standard); *cf. First Sec. Bank v. Conlin*, 817 P.2d 298, 299 (Utah 1991) (noting that Utah courts look to case law interpreting similarly worded federal rules where Utah case law is lacking). We adopt this minimum requirement for pleading § 1983 claims against municipalities in Utah.

¶ 14 Here, Jones's first amended complaint only alleges that the City's destruction of Jones's firearms deprived him of due process. There is no mention, even superficially, that the City's police department acted pursuant to the City's custom or policy, or anything that can reasonably be construed as such. Thus, the trial court properly dismissed Jones's § 1983 claim as a matter of law.

### III. Trial Court's Denial of Proposed Second Amended Complaint

¶ 15 Jones argues the trial court abused its discretion in denying Jones's motion for leave to file a second amended complaint. In his proposed second amended complaint, Jones seeks to add Officer Kelly Kent, individually, as a defendant, and alleges that the destruction of the firearms was in accordance with City policy.

¶ 16 "Rule 15(a) of the Utah Rules of Civil Procedure directs that leave to amend pleadings 'shall be freely given when justice so requires,' " *Nunez v. Albo*, 2002 UT App 247, ¶ 19, 53 P.3d 2 (quoting Utah R. Civ. P. 15(a)), and "[i]t is well established that rule 15 should be interpreted liberally so as to allow parties to have their claims fully adjudicated." *Id.* (quotations and citation omitted). Factors to consider in deciding whether to allow amendment include whether the movant "was aware of the facts underlying the proposed amendment long before its filing," "the timeliness of the motion," "the justification for the delay," and "any resulting prejudice to the responding party." *Atcitty v. Board of Educ.*, 967 P.2d 1261, 1264 (Utah Ct.App.1998) (quotations and citations omitted).

¶ 17 We conclude the trial court did not abuse its discretion when it denied Jones leave to add Officer Kent as an individual defendant and the allegation that the destruction of the firearms was in accordance with City policy. As the trial court found, Jones moved to amend his complaint nearly a year after the cutoff date for amending pleadings in the trial court's scheduling order. *See Nunez*, 2002 UT App 247 at ¶ 33, 53 P.3d 2 (noting in movant's favor that "no scheduling order had been entered"). Presumably, Jones could have easily discovered earlier the names of individual officers involved in destroying the weapons, and Jones should have known all along whether he wanted to sue Officer Kent individually. *See Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 49, 56 P.3d 524 ("[A] trial court does not abuse its discretion when it denies a motion to amend a pleading ... when[, in part,] the moving party knew that all of the parties it sought to add were involved with each other from the outset of the case and therefore ... they could have been joined in a timely manner." *Id.* (quotations and citations omitted)). Jones presents no new information to suggest otherwise. Further, Jones should have been aware of the "custom or policy" legal requirement of § 1983 claims from the outset.

¶ 18 Moreover, as noted above, Jones did not file his motion to amend until well after entry of the scheduling order, after lengthy discovery, and nearly a year after the cutoff date in the scheduling order for the amendment of pleadings. Therefore, we cannot say the trial court abused its discretion in failing to allow Jones to amend his complaint.

### IV. Due Process

¶ 19 Jones contends the trial court erred in dismissing his claim that the City denied him procedural due process by destroying his firearms without providing notice and a hearing. Jones arguably has shown a due process property interest in the firearms' proceeds in that Judge Iwasaki's order gave Jones a "legitimate claim of entitlement to [the proceeds]." *Patterson v. American Fork City*, 2003 UT 7, ¶ 23, 67 P.3d 466 (quoting *Board of Regents v. Roth*, 408

U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). However, Jones failed to properly state a claim against the City under 42 U.S.C. § 1983, and Jones may not assert a direct claim against the City for violations of due process under the federal constitution. "[D]irect actions under the Constitution against state officials are not appropriate.... '[T]he Supreme Court has never recognized a [direct constitutional] cause of action where § 1983 was available as a remedy.' " *Bauchman v. West High School,* 900 F.Supp. 254, 263 (D.Utah 1995) (quoting *Thomas v. Shipka,* 818 F.2d 496, 500 (6th Cir.1987), *judgment vacated on other grounds,* 488 U.S. 1036, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989)). Consequently, the trial court properly dismissed Jones's due process claim under the federal constitution.

## CONCLUSION

¶ 20 We conclude Jones failed to state a claim for conversion as a matter of law. Additionally, Jones failed to properly plead a § 1983 cause of action against the City. Further, the trial court did not abuse its discretion in denying Jones's motion for leave to amend his complaint to add Officer Kent as a defendant and allege the City acted under its own policy. Finally, while Jones may have a cognizable claim for violations of his due process rights, because he failed to properly assert a valid cause of action under 42 U.S.C. § 1983, we conclude his due process claim fails as well.

BENCH, Judge, (concurring in the result):

¶ 21 Because it was the Iwasaki order that gave Jones a due process property interest in the firearms, it was incumbent upon Jones to timely give the city notice of the order's existence. He made no effort to do so until long after the firearms had been destroyed pursuant to city policy. Jones is therefore in no position to assert any claim to the firearms.

¶ 22 A brief review of the time line helps to explain why, as a matter of law, the city cannot be held responsible for Jones's claim. In March 1997, Jones was arrested and the firearms were seized. In August 1997, Jones pleaded guilty and in October 1997, he ob-tained the Iwasaki order. Jones concedes that the city first received notice of the existence of the Iwasaki order in December 1998. The city, however, had destroyed the firearms many months earlier—in February 1998. In view of Jones's failure to timely apprise the city of his property interest, the claims he asserts fail as a matter of law.

¶ 23 I therefore concur in the result of the lead opinion, which affirms summary judgment.

DAVIS, Judge, (concurring and dissenting):

¶ 24 First, I concur in the analysis in footnote 2 of the lead opinion relative to the accrual of Jones's conversion claim, but dissent with respect to the remainder of the analysis.

¶ 25 The lead opinion summarily disposes of Jones's conversion claim for "failure to state a legal claim" for conversion—a ground not argued to or ruled upon by the trial court or argued by either party to this court—a concern I expressed in *Bailey v. Bayles,* 2001 UT App 34,¶ 18, 18 P.3d 1129 (Davis, J., dissenting), *aff'd,* 2002 UT 58, 52 P.3d 1158. Even if it were appropriate to base our decision on an issue not addressed by either the parties or the trial court, I have found no authority for the proposition that a statute criminalizing possession of property is tantamount to depriving one of an interest therein for the purpose of pursuing a conversion claim.

¶ 26 The city argues that the firearms are "per se contraband." Many firearms are not inherently illegal to possess, and it is only Jones's "membership in a category of persons prohibited from possessing firearms" that criminalized Jones's possession of the firearms. *Cooper v. City of Greenwood,* 904 F.2d 302, 305 (5th Cir.1990); *see also Serio v. Baltimore County,* 115 F.Supp.2d 509, 515 n. 6 (D.Md.2000) (mem.) (concluding defendant's firearms were not contraband per se where defendant was a convicted felon without possessory rights in the firearms, but where the possession of firearms, standing alone, was not a crime); *but see Bilida v. McCleod,* 211 F.3d 166, 173 (1st Cir.2000)

(concluding that a wild raccoon, which could not be lawfully possessed without a permit, was contraband per se in the hands of a permitless defendant).

¶ 27 The lead opinion then begins the remainder of its analysis by correctly observing that Jones initially failed to properly plead his § 1983 action, *see* 42 U.S.C.A. § 1983 (2003), and then approving the trial court's refusal to allow Jones to remedy the defect because "[p]resumably, [our presumption, not based on any evidence or law,] Jones could have easily discovered ... the names of individual officers involved in destroying the weapons"; and our similar unilateral determination that "Jones should have been aware of the 'custom or policy' legal requirement." What Jones could or could not have discovered and what Jones should or should not have been aware of involve factual determinations, inappropriate for summary judgment.

¶ 28 Finally, having ruled that Jones cannot pursue his § 1983 claim, we, again without notice to the parties, and notwithstanding Judge Iwasaki's order, deprive Jones of his due process claim because " § 1983 was available as a remedy." Jones has shown a due process property interest in the firearms' proceeds. This case is factually unique because Judge Iwasaki ordered that the firearms be turned over to a dealer and sold at market value, with the proceeds returned to Jones. The city deprived him of this right to the proceeds by destroying the weapons rather than returning them for sale.

¶ 29 A due process property interest arises from an independent legal source, *see Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), "such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir.1991). Here, the judicial order, regardless of the unique facts surrounding it, is another example of an independent source carrying the force of law. Judge Iwasaki's order—similar to a statutory

entitlement—gave Jones " 'more than a unilateral expectation of [the proceeds],' " but rather a " 'legitimate claim of entitlement to [them].' " *Patterson v. American Fork City*, 2003 UT 7, ¶ 23, 67 P.3d 466 (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709).[1] This is especially true in light of the city's lack of any legal authority to destroy the firearms.[2]

¶ 30 In my view, under all of the facts and circumstances of this case (not those based on our presumption or what we think Jones should have been aware of), Jones should have been allowed to amend his complaint and pursue his claims.

---

1. The city does not challenge the legal validity of Judge Iwasaki's order.

2. The trial court found, in a collateral matter, that the city had no legal authority to destroy the

weapons, and the city does not contest this other than pointing to a statute, *see* Utah Code Ann. § 76–10–525 (1999), that only deals with weapons used as evidence in court.