UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1454**


SHARRENE TIMOTHY; THOMAS TIMOTHY,

             Plaintiffs - Appellants,

    v.

BOSTON SCIENTIFIC CORPORATION,

             Defendant - Appellee.


Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.   Joseph R. Goodwin,
District Judge.  (2:12-cv-05950)


ARGUED:  October 26, 2016          Decided:  December 16, 2016


Before THACKER, and HARRIS, Circuit Judges, and Gerald Bruce
LEE, United States District Judge for the Eastern District of
Virginia, sitting by designation.


Affirmed by unpublished per curiam opinion.


**ARGUED:** Jessica Ann Kasischke, FLEMING, NOLEN & JEZ, L.L.P.,
Houston, Texas, for Appellants.  Daniel Brandon Rogers, SHOOK,
HARDY & BACON L.L.P., Miami, Florida, for Appellee. **ON BRIEF:**
Karen Beyea-Schroeder, Sylvia Davidow, Kelsey L. Stokes,
FLEMING, NOLEN & JEZ, L.L.P., Houston, Texas, for Appellants.
Michael Bonasso, Charleston, West Virginia, Lindsey M. Saad,
FLAHERTY SENSABAUGH & BONASSO PLLC, Morgantown, West Virginia,
for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sharrene Timothy and Thomas Timothy,[1] Utah residents, (collectively, "Appellants") filed suit against Boston Scientific Corporation ("Appellee") alleging defects in Appellee's transvaginal mesh products. The district court granted summary judgment in favor of Appellee, concluding that Appellants' claims are barred by Utah's two year statute of limitations for product liability actions. For the following reasons, we affirm.

I.

On June 30, 2009, Dr. Steven Johnson implanted Mrs. Timothy with Boston Scientific's transvaginal mesh products to treat stress urinary incontinence. Prior to the surgery, Dr. Johnson advised Mrs. Timothy that he would use Boston Scientific's products, informed her of the "pros, cons, risks, and benefits of mesh," and warned of potential side effects such as erosion. J.A. 462; see id. at 134, 473.[2]

---

[1] Thomas Timothy's claims are derivative of his wife's, and we refer only to Sharrene Timothy unless otherwise noted. Because we find Mrs. Timothy's claims are time-barred, Mr. Timothy's suit must also be dismissed as it is "subject to the same defenses, limitations, immunities, and provisions applicable to the claims of the injured person." Utah Code § 30-2-11(4)(b).

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

According to Mrs. Timothy, approximately six or seven months later, she began experiencing significant pelvic pain, dyspareunia, blood in her urine, and a scratching sensation in her vagina. Because of her problems, on April 19, 2010, Mrs. Timothy went to see Dr. Johnson. Dr. Johnson examined Mrs. Timothy and found mesh erosion and told her he could "feel the mesh." J.A. 138. Dr. Johnson subsequently performed a second surgery to repair the mesh. However, according to Appellants, Mrs. Timothy continued to suffer pain, an itching sensation in her vagina, infections, urinary incontinence, and dyspareunia.

Then, in late 2011, Mrs. Timothy saw an attorney television advertisement about possible complications resulting from transvaginal surgical mesh. After contacting one of the law firms advertising their services, on September 26, 2012 -- more than three years after Mrs. Timothy's original surgery -- Appellants filed action against Appellee as part of the Multi-District Litigation ("MDL") in the Southern District of West Virginia claiming injuries from allegedly defective mesh. Following discovery, Appellee moved for summary judgment, arguing Mrs. Timothy's claim accrued more than two years prior to her filing. The district court granted summary judgment, concluding that Appellants' claim was barred by Utah's applicable two year statute of limitations for product defect claims. Appellants timely appealed.

4

II.

We review de novo a district court's grant of summary judgment. See RLM Commc'ns, Inc. v. Tuschen, 831 F.3d 190, 195 (4th Cir. 2016).

III.

A.

Utah's choice of law principles control because the actions forming the basis of the lawsuit occurred there. See In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996). Utah law applies the most significant relationship test to determine the applicable law. See Waddoups v. Amalgamated Sugar Co., 54 P.3d 1054, 1060 (Utah 2002) ("Having concluded, for purposes of the choice of law analysis, that plaintiffs' claims sound in tort, we next determine which state 'has the most significant relationship to the occurrence and the parties.'") (quoting Restatement (Second) Conflict of Laws § 145(1) (1971)). Because the surgery and injury occurred in Utah, we find Utah has the most significant relationship and therefore apply Utah's substantive law.

The Utah Products Liability Act ("UPLA") creates a two year statute of limitations:

> A civil action under this part shall be
> brought within two years from the time the
> individual who would be the claimant in the

action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause.

Utah Code § 78B-6-706 (2008).

Under Utah law, "all that is required to trigger the statute of limitations is sufficient information to put plaintiffs on notice to make further inquiry if they harbor doubts or questions." Macris v. Sculptured Software, Inc., 24 P.3d 984, 990 (Utah 2001). Once a person is put on notice to inquire further, the person is imputed with knowledge of "everything to which such inquiry might have led." Pioneer Builders Co. of Nev. v. K D A Corp., 292 P.3d 672, 679 (Utah 2012). A claim accrues when a person knows or should know all of the information necessary to state her claim for relief. See Bank One Utah, N.A. v. W. Jordan City, 54 P.3d 135, 137-38 (Utah Ct. App. 2002).

For a products liability action, the claim accrues when a person knows or should know: (1) the injury; (2) the identity of the maker of the allegedly defective product; and (3) a possible causal relation between the product and the manufacturer. See Aragon v. Clover Club Foods Co., 857 P.2d 250, 252-53 (Utah Ct. App. 1993).

Appellants argue that the causal relationship required for a claim to accrue is that the product be the cause-in-fact of an injury. Even assuming their argument is correct, we

6

conclude that Appellants' claims accrued on April 19, 2010, and are therefore barred by the applicable statute of limitations.[3]

B.

Even before her April 19, 2010 doctor visit, Mrs. Timothy was on notice of her injury and the identity of the product manufacturer. Before surgery, Dr. Johnson told Mrs. Timothy he was using products manufactured by Boston Scientific in the surgery and warned her of possible erosion. And, prior to the April 19, 2010 visit, Mrs. Timothy had experienced bleeding, pain, and an itching sensation, which constituted her injury, for at least three months.

Moreover, during the visit, Dr. Johnson put her on notice of the possible causal connection. Specifically, Dr. Johnson told Mrs. Timothy he could "feel the mesh" and that the mesh "was _causing_ the bleeding." J.A. 139 (emphasis supplied). As a result, Dr. Johnson recommended a second surgery to remove and replace the mesh. His office notes identify that there was already "some erosion of her mesh." Id. at 153. Thus, at least as of the April 19, 2010 doctor visit, Mrs. Timothy was on

---

[3] Appellants raise a series of additional arguments relating to alleged procedural errors in the district court's grant of summary judgment. None of these arguments have merit. The district court appropriately granted summary judgment to Appellee after finding there were no genuine issues of material fact. See Fed. R. Civ. P. 56(a).

7

notice of: (1) her injury; (2) the identity of the defective product's manufacturer; and (3) the possible causal connection between her injuries and the mesh, which required her to make further inquiries. See First Am. Title Ins. Co. v. J.B. Ranch, Inc., 966 P.2d 834, 837 (Utah 1998).

Nevertheless, Appellants argue that inquiry notice was not triggered until they saw an attorney television advertisement. However, it seems highly unlikely a lawyer's advertisement provided any new medically relevant information about "the connection between [Mrs. Timothy's] injuries and the actual cause" than that which had already been provided by a medical professional. Appellants' Br. 3. Her doctor had already told her the mesh was "causing the bleeding" and warned of side effects from the mesh, including erosion. J.A. 141.

C.

Mrs. Timothy had a duty to inquire starting on at least April 19, 2010, and this court must now determine what a reasonable inquiry would have uncovered. See Pioneer Builders Co. of Nev., 292 P.3d at 679. For starters, even the most basic inquiry would have led to the 2008 Food and Drug Administration's ("FDA") warning about transvaginal mesh.[4] The

---

[4] That the FDA provided a notification in 2008 and the content of that notification are facts that can be judicially noticed because they "can be accurately and readily determined
(Continued)

FDA Notification warned "**Serious Complications Associated with Transvaginal Placement of Surgical Mesh in Repair of Pelvic Organ Prolapse and Stress Urinary Incontinence,**" and it cautioned that transvaginal mesh was linked to "pain, urinary problems, and recurrence of prolapse and/or incontinence." FDA Notification.[5] Mrs. Timothy experienced all of these symptoms, and, indeed, her doctor had already told her mesh was causing her to bleed. See J.A. 140 ("Q: So did Dr. Johnson tell you that he believed that the mesh was what was causing you to bleed? A: Yes."). The FDA Notification also noted that, in unusual cases, there were reports of "a significant decrease in patient quality of life due to discomfort and pain, including dyspareunia." Mrs. Timothy also experienced these symptoms.

Because the FDA had issued an official notification about the link between the product Mrs. Timothy used and the injuries she suffered, we have no trouble concluding Mrs.

---

from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); see Food and Drug Admin., FDA Public Health Notification: Serious Complications Associated with Transvaginal Placement of Surgical Mesh in Repair of Pelvic Organ Prolapse and Stress Urinary Incontinence (Oct. 20, 2008), http://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/Public HealthNotifications/ucm061976.htm ("FDA Notification") (saved as ECF opinion attachment).

[5] Indeed, the FDA was even more definite about potential health complications than the attorney advertisements Mrs. Timothy saw.

Timothy had notice that the mesh was the cause-in-fact of her injuries since her doctor visit on April 19, 2010. As such, her action filed more than two years later on September 26, 2012, is time-barred.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED