2014 UT App 16

**Charles Albert WARNER, Alan Smith Warner, and Theron C. Warner, Plaintiffs, Appellees, and Cross-appellants,**

v.

**Albert Heber WARNER Jr., Vernon S. Warner, and Valeen W. Peterson, Defendants, Appellants, and Cross-appellees.**

No. 20110078–CA.

Court of Appeals of Utah.

Jan. 24, 2014.

Second District Court, Ogden Department; No. 983900152; The Honorable Roger S. Dutson; The Honorable W. Brent West.[2]

David B. Stevenson, Vancouver, and Samuel A. Hood, Attorneys for Appellants and Cross-appellees.

---

2. Judge Roger S. Dutson granted the Defendants' summary judgment motion and denied the Plaintiffs' first two motions to amend. Judge W. Brent West denied the Plaintiffs' third motion to amend, granted the relief requested by the Plaintiffs, and entered the orders regarding attorney fees.

Dale F. Gardiner, Scott M. Lilja, and Nicole M. Deforge, Salt Lake City, Attorneys for Appellees and Cross-appellants.

Christopher S. Hill, Shawn T. Richards, and Joshua S. Rupp, Salt Lake City, Attorneys for Appellants and Cross-appellees on Petition for Rehearing.

Judge STEPHEN L. ROTH authored this Amended Opinion, in which Judges GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

## Amended Opinion [1]

ROTH, Judge:

¶ 1 This appeal arises from litigation that has been ongoing for more than fifteen years over a family trust. The Defendants Albert "Skip" Heber Warner Jr. (Skip), Vernon S. Warner, and Valeen W. Peterson (collectively, the Trustees) appeal from the district court's order that certain trust property be removed from the trust. They also challenge the court's decision to require the Trustees to pay some of the Plaintiffs' attorney fees, as well as the court's denial of their own requests that their attorney fees be paid by the Plaintiffs, rather than by the trust. The Plaintiffs Charles Albert Warner, Alan Smith Warner,[3] and Theron C. Warner (collectively, the Beneficiaries)[4] cross-appeal the district court's grant of summary judgment to the Trustees on all of the Beneficiaries' claims and the court's denial of the Beneficiaries' subsequent motions to amend their pleadings. We reverse the district court's order that the Trustees remove what the parties refer to as the Smith Property from the trust and the court's denial of that portion of the Beneficiaries' last motion to amend related to the Smith Property and remand for further consideration. We affirm on all other issues.

## BACKGROUND

¶ 2 Albert H. Warner (Father) and Joanne S. Warner (Mother) (collectively, the Settlors) executed the Albert H. Warner Family Trust (the Trust) in 1988 to benefit their eight children. The Settlors named four of their children—Skip, Vernon, Valeen, and Alan—as trustees. Father died in 1995, and Mother subsequently executed a "Will of Joanne Smith Warner" (Mother's Will), in which she purported to authorize Skip to take "lead responsibility in charge of the [T]rust" and to give him her power of attorney. Mother died in 1996. According to the Trust's terms, "[f]ollowing the death of both Settlors all assets, except those listed below[,] remaining after payment of debts, taxes and expenses and disposition of personal and household effects shall be divided into equal shares." The excepted property—that is, the property permitted to remain in the Trust—included "80 acres [of vacation property] ... [to] be established as a permanent recreation area for their family" and "[a]ll stocks, bonds, mutual funds and similar investment assets," "collectively referred to as securities." The securities were to be used "to provide funds for taxes, expenses of maintenance and improvement and insurance and any other expenses in connection [with the vacation property]." When the Trust was created, the trust corpus consisted of all the Settlors' assets, which included, among other things, the eighty acres of vacation property and the securities. In addition, Mother expected to inherit a 320–acre parcel of property located in Box Elder and Cache Counties (the Smith Property) and had prepared a special warranty deed in April 1988, transferring the Smith Property to the Trust in anticipation of that inheritance. The Smith Property became a Trust asset in

---

**1.** This Amended Opinion replaces the Opinion issued September 19, 2013, *Warner v. Warner*, 2013 UT App 225. Footnote 6, formerly footnote 5, has been revised, and paragraphs 59 to 64 have been added to address issues the Plaintiffs raise in a petition for rehearing.

**3.** Alan Smith Warner died in 2005, and his estate's personal representative, Patricia A. Warner, was substituted as a party.

**4.** The Trustees are also beneficiaries of the trust. Our references to the parties as the Beneficiaries and the Trustees are intended simply to clarify the parties' relationships to each other in this lawsuit, i.e., the Beneficiaries are suing as the parties who are benefitted by the trust and to whom the Trustees owe a fiduciary obligation, while the Trustees are being sued in their capacity as the managers of the trust.

2003.[5]

¶3 The Beneficiaries sued three of the four trustees (excepting only Alan) on June 5, 1998, alleging multiple breaches of fiduciary duty. The Beneficiaries also sought an order to show cause asking the district court to order, among other things, the Trustees to be "restrained and enjoined from incurring additional costs and expense" related to the vacation property, "be removed as trustees," and be ordered to cover their own attorney fees as opposed to having them paid out of the Trust. The Trustees filed an answer denying that they had breached their fiduciary obligations and seeking removal of Alan as a trustee and payment of their attorney fees. In their response to the Beneficiaries' request for an order to show cause, the Trustees included a copy of Mother's Will, presumably to demonstrate that the Settlors intended Skip to be primarily responsible for carrying out their desires. The parties later treated this as the Trustees' request for a declaratory judgment on the validity of Mother's Will. The court issued the order to show cause but, after hearing "argument and proffered testimony," denied the Beneficiaries' "request for temporary and preliminary remedies."

¶4 The Trustees then moved for "summary judgment dismissing the complaint of [the Beneficiaries] and in favor of [the Trustees] on their counterclaim for removal of plaintiff, Alan Smith Warner as a trustee and for [their] attorneys' fees." The Beneficiaries opposed the Trustees' motion, asserting that there were issues of fact related to the Trustees' performance of their fiduciary obligations and the validity of Mother's Will, which precluded summary judgment. The Beneficiaries also moved to amend their complaint to add a claim for equitable modification of the Trust to require distribution of all its assets. The amendment further sought to dissolve the Trust due to the continuing animosity between the Trustees and the Benefi-

ciaries and because of Alan's financial need due to a recent loss of employment.

¶5 In late 1999, the district court granted partial summary judgment in favor of the Trustees and dismissed all of the Beneficiaries' causes of action. The court concluded that the Trustees had not breached their fiduciary obligations because the facts, even construed in a light most favorable to the Beneficiaries, demonstrated that the Trustees "have exercised certain discretionary duties which clearly do not please all the beneficiaries, but they have acted consistent with general law relating to trustees and consistent with [the Utah Code section governing joint trustees] and they have substantially complied with the Trust provisions." The court denied the Trustees' motion for summary judgment on their counterclaim, stating that "there are still material questions of fact regarding the propriety and legality of" Mother's Will, which made elevating Skip to "lead" trustee or removing Alan "premature." The court also denied the Beneficiaries' motion to amend the complaint because the proposed amendment did not "address proper issues in this case" but nevertheless admonished that the Trustees "have not been wholly without mistake and in the future the court will apply a very stringent standard upon" the Trustees in conducting Trust business, including possibly "revisit[ing the motion to amend] upon presentation of proper evidence justifying amendment."

¶6 Over the next ten years, the Beneficiaries made further attempts to amend their complaint. In July 2001, they filed a second motion to amend, in which they alleged additional trustee misconduct and sought reformation of the Trust or partition of the Trust property. The court denied the motion on the basis that the Beneficiaries' claims would not be best resolved through judicial intervention.

---

5. In their statement of facts, the Trustees state that this occurred in 2003, contrary to the evolving positions they took in the district court: first, they had claimed that the Smith Property was never a Trust asset and, later, that it became a Trust asset only in 2006. The Beneficiaries contend that the 2003 date is unsupported by the record, but they neither propose a contrary date nor offer any substantial support for their challenge to the 2003 date. Because the date is not pertinent to our resolution, we accept for purposes of appeal that the Trust received the Smith Property in 2003.

¶ 7 In August 2007, after the case had been reassigned to Judge W. Brent West, the Beneficiaries filed a third motion to amend their complaint, in which they sought to partition the vacation property and distribute the remaining trust corpus, including the Smith Property.[6] The Trustees opposed the motion, asserting that the Beneficiaries "ma[d]e the same claims as in previous attempts to amend their complaint," all of which had been denied by the court, and raising other procedural objections to amendment. A hearing on the motion to amend was eventually scheduled for May 27, 2009 (the May 2009 hearing). The morning of the hearing, the Trustees filed a motion for attorney fees pursuant to Utah Code section 78B–5–825 (the bad faith statute) and subsection (1) of section 75–7–1004 (the trust statute).

¶ 8 During the course of the hearing, the Trustees' counsel represented that the Smith Property was "not in the Trust" and that the Trustees "have two separate accounts[;] . . . one, handle[s] the Smith funds and then the remaining Warner Estate funds are handled separately." Following argument from both sides, the court orally denied the Beneficiaries' motion to amend, in part because it "ha[d] evidence today that the Smith [Property is] . . . being administered separately" from the Trust. When the Beneficiaries insisted that the Smith Property was still held by the Trust, the court turned to the Trustees and told them to do "whatever you've got to do to get that Smith [Property] out of there." [7] The court denied the remainder of the Beneficiaries' motion to amend on multiple grounds, including that the causes of action did not arise out of the same conduct as the original causes of action, were time barred by the statute of limitations and doctrine of laches, and were precluded under the doctrines of res judicata and law of the case. The court further determined that the disputes over the validity of Mother's Will and power of attorney were moot. The district court seemed to reserve a ruling on the Trustees' motion for attorney fees, noting that the Beneficiaries had not yet had "a chance to look at [the Trustees' attorney fees affidavit] and submit any counter affidavits or objections" and directing the Trustees to "submit that" motion for decision. The court requested that the Trustees prepare a written order memorializing the court's oral ruling.

¶ 9 On June 5, 2009, the Trustees sent the Beneficiaries a proposed order purporting to memorialize the decisions made at the May 2009 hearing. The proposed order, however, contained at least two significant misstatements of the district court's oral ruling: First, it did not include a provision for divesting the Smith Property from the Trust, as

**6.** In January 2006, with apparent leave from the district court, the Beneficiaries filed their first amended petition to partition the vacation property and to order distribution of the remaining trust corpus, including the Smith Property. The Trustees filed an answer and a motion for summary judgment. One-and-a-half years later, in July 2007, without having resolved the Trustees' motion for summary judgment, the court conducted a telephone conference with the parties. Although the record contains a minute entry indicating that the "[p]arties discuss[ed] the case," the subject of that conference is not included in the minute entry. But it can be inferred that the subject of the conference was the Beneficiaries' failure to have filed a motion for leave to amend prior to filing the amended complaint because immediately following the telephone conference, the Beneficiaries filed a third motion to amend their petition with supporting memorandum. The motion sought to add claims virtually identical to the causes of action asserted in their first amended petition filed in January 2006. At the hearing on the motion to amend, counsel for the Trustees explained that the Beneficiaries had "filed an amended complaint," but after briefing was complete on the Trustees' unresolved motion for summary judgment, "they realized there was never a motion to amend," rendering the Beneficiaries' complaint "not properly amended."

Although the Beneficiaries did not dispute the Trustees' characterization of what had happened, the record indicates that the Beneficiaries did have permission to file the 2006 amended complaint. The parties do not address this discrepancy, and as a result, we accept, for purposes of this appeal, that the Beneficiaries' first amended petition was not properly before the court when they filed their third motion to amend.

**7.** The Beneficiaries asked for distribution of the Smith Property. The district court appears to have ordered the property divested from the Trust. Because our analysis does not depend on any difference there may be in these two terms, we refer to the court's actual order regarding the Smith Property as divestment throughout this decision.

the court had explicitly directed at the hearing; rather, it stated that the Smith Property was properly held in the Trust. Second, it provided that "[t]he Court will award attorney fees and costs to the prevailing party, the [Trustees]," in the amount of $134,275 [8] On June 18, 2009, the Beneficiaries filed an untimely objection,[9] in which they pointed out that the proposed order "fails to contain the admonition of the court that the real property of the Smith estate should be distributed from the trust as the only trust corpus not for distribution would be the vacation property [and] the stock portfolio." The next day, the Trustees filed a notice to submit on their motion for attorney fees. The Beneficiaries' counsel had, at that point, left town on vacation. Concerned because their objection had been untimely and because they had not yet responded to the Trustees' attorney fees motion, the Beneficiaries hired another law firm to represent their interests.

¶ 10 On June 24, 2009, the Beneficiaries, through their new counsel, filed a motion to enlarge the time for filing an objection until June 30. The motion asserted good cause and excusable neglect as grounds for permitting an extension, specifically citing the Beneficiaries' original attorney's failure to notify them of the deadline for objecting and counsel's ensuing departure on vacation. On June 30, the Beneficiaries filed a new objection to the proposed order, citing the order's failure to direct the Trustees to remove the Smith Property from the Trust and its award of attorney fees to the Trustees. The Trustees filed a response, opposing any extension on the basis that the reasons offered for the Beneficiaries' failure to file a timely objection did not constitute excusable neglect.

¶ 11 Without expressly ruling on their motion to enlarge the time to object, the district court concluded that the "[Beneficiaries'] Objection to the [proposed] Order on the hearing held May 27, 2009 is well founded" and

issued a written decision ordering the Trustees to amend the proposed order to include language accurately reflecting its rulings on the distribution of the Smith Property. One week later, the Trustees submitted a second proposed order, which the court signed. The second proposed order, however, did not remedy the primary problems with the original proposed order; it still provided that the Smith Property was properly held in the Trust, and it still awarded attorney fees to the Trustees, only now with the "amount of attorney fees" to be determined. Consequently, the Beneficiaries filed a motion to alter or amend judgment, drawing the district court's attention to the fact that the Trustees had again misstated the court's ruling from the May 2009 hearing even after the court had ruled that the Beneficiaries' objection to the original proposed order was well founded and had instructed the Trustees to prepare a corrected order that accurately reflected the court's ruling and to submit an affidavit on attorney fees. In addition, the Beneficiaries submitted their own proposed order memorializing the May 2009 ruling. Following a hearing, the court set aside the Trustees' order that the court had mistakenly signed and executed the Beneficiaries' proposed order, explaining that the Beneficiaries' order did "exactly what [the court] thought [it] did" at the May 2009 hearing when it determined that the Smith Property "is being improperly held in the ... Trust and order[ed] the [T]rustees to immediately transfer that property out of the ... Trust." The Beneficiaries' order also indicated that the court would "reserv[e any] motions for attorneys' fees filed by both parties for [future] determination."

¶ 12 The district court later concluded that the Trustees had acted in bad faith when they submitted a proposed order that was "180 degrees different than what [the court] ruled" regarding the Smith Property at the May 2009 hearing. The court awarded the

8. This version of the proposed order is not in the record, but it seems apparent from the other evidence in the record and the briefing on appeal that the Trustees originally submitted a proposed order that awarded them $134,275 in fees.

9. Rule 7(f)(2) of the Utah Rules of Civil Procedure provides that "the prevailing party shall,

within fifteen days after the court's decision, serve upon the other parties a proposed order in conformity with the court's decision" and that any "[o]bjections to the proposed order shall be filed within five days after service." Utah R. Civ. P. 7(f)(2).

Beneficiaries $37,210 in attorney fees to be paid by the Trustees personally and not with Trust funds. The court also denied the Trustees' pending motion for attorney fees against the Beneficiaries for all of the attorney fees the Trustees had incurred during the entire litigation. The court explained that it was denying fees to the Trustees under the bad faith statute because the previous judge had found that the Beneficiaries were acting in good faith and none of their actions since Judge West had been assigned justified "a finding that [the Beneficiaries] in this case were acting in bad faith and that the[ir pleadings] were frivolous." It also denied the Trustees' request for reimbursement under the trust statute on the basis that the Trust had already covered the Trustees' attorney fees and based on its understanding that attorney fees were available under subsection (1) only to parties who "don't have any official status" that would otherwise entitle them to be reimbursed attorney fees from the Trust.

¶ 13 The Trustees now appeal from the court's order that they divest the Trust of the Smith Property and from its two attorney fees rulings: the award of attorney fees to the Beneficiaries and the refusal to award attorney fees to the Trustees. The Beneficiaries cross-appeal the 1999 grant of summary judgment in favor of the Trustees on all of their causes of action and the court's subsequent denials of their motions to amend the complaint.

## ISSUES AND STANDARDS OF REVIEW

¶ 14 The Trustees argue that the district court erred when it ordered the Smith Property to be removed from the Trust because the court no longer had subject matter jurisdiction after it granted judgment in favor of the Trustees on all of the Beneficiaries' claims. Alternatively, they assert that the Smith Property was properly held in the Trust. Whether a court has subject matter jurisdiction is a question of law reviewed for correctness. *Housing Auth. of Salt Lake v. Snyder,* 2002 UT 28, ¶ 10, 44 P.3d 724. Whether a court has authority to resolve an issue between the parties is a question of law. *See In re Adoption of Baby E.Z.,* 2011

UT 38, ¶ 31, 266 P.3d 702 ("[T]he concept of subject matter jurisdiction [is limited] to those cases in which the court lacks authority to hear a class of cases, rather than when it simply lacks authority to grant relief in an individual case.").

¶ 15 The Trustees also claim that the court improperly found excusable neglect to justify granting the Beneficiaries an extension to respond to the Trustees' proposed order from the May 2009 hearing. Ordinarily, we review a district court's grant of an extension of time to respond to a motion for abuse of discretion, Utah R. Civ. P. 6(b); *see also West v. Grand Cnty.,* 942 P.2d 337, 339–40 (Utah 1997). Here, the court appears to have been exercising its inherent authority to control the parties' conduct and protect the integrity of the judicial system. *See Barnard v. Wassermann,* 855 P.2d 243, 249 (Utah 1993). A court's exercise of its inherent authority is essentially discretionary, *see Chen v. Stewart,* 2005 UT 68, ¶ 36, 123 P.3d 416, and accordingly reviewed for abuse of discretion.

¶ 16 Finally, the Trustees appeal the district court's decisions regarding attorney fees. This issue is divided into three parts. First, the Trustees dispute the award of attorney fees to the Beneficiaries under the bad faith statute and the order requiring the Trustees to pay those fees individually. *See* Utah Code Ann. § 78B–5–825(1) (LexisNexis 2012) (permitting an award of attorney fees where a party's act is meritless and not asserted in good faith).[10] Second, the Trustees contend that the district court erred in denying their own request for attorney fees under the bad faith statute. Finally, the Trustees assert that the district court erred in denying them attorney fees under subsection (1) of the trust statute (section 1004(1)). *See id.* § 75–7–1004(1) (LexisNexis Supp. 2013) (permitting a court to award attorney fees in "a judicial proceeding involving the administration of a trust"). Generally, the grant or denial of attorney fees is left to the district court's sound discretion. *Fisher v. Fisher,* 2009 UT App 305, ¶ 8, 221 P.3d 845

---

**10.** None of the statutes cited in this decision have been amended since the underlying litigation. We therefore cite the current codification of each statute for the reader's convenience.

(reviewing the denial of attorney fees under the trust statute); *Hooban v. Unicity Int'l, Inc.,* 2009 UT App 287, ¶¶ 6–7, 220 P.3d 485 (reviewing the denial of attorney fees under the bad faith statute), *aff'd,* 2012 UT 40, 285 P.3d 766. However, to the extent that the denial of statutory attorney fees depends upon an interpretation of the applicable statute, the district court's determination about what the law requires is reviewed for correctness. *Fisher,* 2009 UT App 305, ¶ 8, 221 P.3d 845; *Hooban,* 2009 UT App 287, ¶ 7, 220 P.3d 485. Furthermore, an award of bad faith attorney fees must be supported by a finding that the burdened party did not act in good faith. *Still Standing Stable, LLC v. Allen,* 2005 UT 46, ¶ 7, 122 P.3d 556. We review the court's finding of bad faith for clear error. *Id.* ¶ 8.

¶ 17 On cross-appeal, the Beneficiaries first assert that summary judgment in favor of the Trustees was inappropriate because "there were genuine issues of material fact" regarding the Trustees' exercise of their fiduciary duties. "When reviewing a trial court's grant of summary judgment, [the appellate court must] give the court's legal decisions no deference, reviewing [them] for correctness, while reviewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Gudmundson v. Del Ozone,* 2010 UT 33, ¶ 44, 232 P.3d 1059 (citation and internal quotation marks omitted). Reversal is warranted, however, only if we determine that the court incorrectly applied the law or incorrectly concluded that no material facts were in dispute. *Francisconi v. Union Pac. R.R. Co.,* 2001 UT App 350, ¶ 8, 36 P.3d 999.

¶ 18 The Beneficiaries also claim that the district court erred in denying their three motions to amend their complaint. Although rule 15 of the Utah Rules of Civil Procedure provides that "leave [to amend] shall be freely given when justice so requires," Utah R. Civ. P. 15(a), the district court's decision on a motion to amend is discretionary and overturned only if that discretion has been abused, *Daniels v. Gamma W. Brachytherapy, LLC,* 2009 UT 66, ¶ 57, 221 P.3d 256.

## ANALYSIS

### I. Smith Property

**A. Additional proceedings are necessary to determine whether the Smith Property ought to be divested from the Trust.**

¶ 19 The Trustees contend that the district court erred in ordering that they divest the Smith Property because the court no longer had subject matter jurisdiction after it denied the Beneficiaries' third motion to amend the pleadings in May 2009. The Trustees rely on the fact that all of the causes of action the Beneficiaries raised in their original complaint had already been resolved on summary judgment and all of the Beneficiaries' subsequent motions to amend the complaint to include a claim to remove the Smith Property from the Trust had been denied.

¶ 20 "Subject matter jurisdiction ... is the authority of the court to decide the case." *Johnson v. Johnson,* 2010 UT 28, ¶ 8, 234 P.3d 1100 (omission in original) (citation and internal quotation marks omitted); *accord Thompson v. Jackson,* 743 P.2d 1230, 1232 (Utah Ct.App.1987) (per curiam) ("Subject matter jurisdiction is the power and authority of the court to determine a controversy and without which it cannot proceed."). "The district court has original jurisdiction in all matters civil ..., not excepted in the Utah Constitution and not prohibited by law," Utah Code Ann. § 78A–5–102(1) (LexisNexis 2012), and it is "the relationship between the claim and the forum that allows for the exercise of jurisdiction," *Johnson,* 2010 UT 28, ¶ 9, 234 P.3d 1100 (citation and internal quotation marks omitted).

¶ 21 Resolution of disputes regarding trust administration fall within the district court's original jurisdiction. Utah Code Ann. § 75–1–302(1)(c) (Michie 1993) ("[T]he court has jurisdiction over all subject matter relating to ... trusts."). The district court therefore had subject matter jurisdiction over the Beneficiaries' trust claim with regard to the Smith Property. But "[t]he concept of subject matter jurisdiction does not embrace all cases where the court's competence is at issue." *Johnson,* 2010 UT 28, ¶ 9, 234 P.3d 1100; *see also In re Adoption of Baby E.Z.,*

2011 UT 38, ¶ 31, 266 P.3d 702 ("[T]he concept of subject matter jurisdiction [is limited] to those cases in which the court lacks authority to hear a class of cases, rather than when it simply lacks the authority to grant relief in an individual case."). The question before us then is whether the Smith Property claim was ever properly brought within the scope of the issues actually before the court for resolution.

¶ 22 The Beneficiaries made a motion to amend the complaint that, if granted, permitted the district court to allow the Beneficiaries' requested relief—removal of the Smith Property from the Trust. If the court denied the motion, however—as it certainly appeared to do at the May 2009 hearing— then there was no claim before the court over which it could exercise authority to provide the requested relief. Yet the court did in fact provide the relief the Beneficiaries requested when it ultimately ordered the Trustees to divest the Trust of the Smith Property. In so doing, it appears that the court fashioned a practical solution to the quandary created by the Trustees' misrepresentation during the May 2009 hearing that the Smith Property was not held in the Trust, a misrepresentation on which the court appeared to have based its earlier decision to deny the Beneficiaries' motion to amend. Essentially, the court told the Trustees to make their misrepresentation true by doing "whatever you've got to do to get that Smith [Property] out of there."

¶ 23 The court's decision, however, bypassed an important mechanism of the judicial system, which requires a demonstration of the merits of a claim through the adversary process before relief can be granted. This omission was prejudicial because the Trustees assert that notwithstanding the Trust provision that "all assets, *except* [the eighty-acre recreational property and the securities] . . . be divided into equal shares and distributed," another provision of the Trust endowed the Trustees with certain "powers over investments," including the right "to retain any asset or property received by [the Trust] at any time from any source" for investment purposes. (Emphasis added.) The Trustees thus claim that the Trust, read

more broadly, permits retention of the Smith Property. But this issue was never taken up by the district court because it was never made a part of the proceedings through the process initiated by the Beneficiaries, i.e., amendment of their complaint. The mechanisms of due process set out in our rules of civil procedure were thus never put into play; rather, the court simply ordered the Smith Property divested, essentially without a hearing on the merits or any of the other procedures our rules provide for the orderly resolution of disputes. While the complicated dynamics in which the order of removal occurred might explain the omission, they cannot legally justify it. We therefore remand this issue to the district court to determine whether it should have granted the motion to amend, given that the Smith Property appeared to have remained in the Trust contrary to counsel's representations, or whether it is still properly denied.

¶ 24 Should the district court decide that the motion to amend was properly denied, the court was without authority to order the Smith Property divested from the Trust. Should the court decide that the motion ought to have been granted, it should do so and then allow the litigation process to resolve the dispute over whether the Trust may continue to hold the Smith Property. Accordingly, we vacate the court's order to divest the Smith Property from the Trust and remand to the district court for further proceedings.

¶ 25 Despite our decision to remand this aspect of the Smith Property issue, we affirm, as discussed below, the district court's rulings related to the Trustees' subsequent conduct in memorializing the court's May 2009 decision regarding the Smith Property.

B. The district court appropriately considered the Beneficiaries' objections.

¶ 26 The Trustees contend that the court erred by—implicitly—granting the Beneficiaries' motion to enlarge the time for filing their objection when it ruled on the Beneficiaries' objections to the Trustees' proposed

order on the May 2009 oral ruling.[11] The Beneficiaries originally responded to the June 5, 2009 proposed order on June 18, after the five-day period for objecting to a proposed order had expired. *See* Utah R. Civ. P. 7(f)(2) (requiring any "[o]bjections to ... be filed within five days after service" of the proposed order). They filed a motion to enlarge time on June 24 that outlined the reasons for the Beneficiaries' delayed response to the Trustees' proposed order and requested an extension until June 30 to file a timely objection. Their June 30 objection addressed more fully the Beneficiaries' concerns with the proposed order, including the order's statement that the Trust properly held the Smith Property and its award of attorney fees to the Trustees. The Trustees assert that neither the motion to enlarge nor the objection demonstrated excusable neglect to justify extending the time period for filing an objection.

¶ 27 The Trustees' focus on details of the requirements for a motion for enlargement of time misses the larger point: A judge has the inherent authority to ensure that his or her rulings are accurately memorialized and can correct misstatements of those rulings at any time, no matter how the error might come to his or her attention. All courts of general jurisdiction have the discretionary authority "to make, modify, and enforce rules for the regulation of the business before the court, ... to recall and control its process, to direct and control its officers, including attorneys as such," for the purposes of "maintain[ing] and protect[ing] the integrity and dignity of the court, ... secur[ing] obedience to its rules and process, and ... rebuk[ing] interference with the conduct of its business." *Barnard v. Wassermann*, 855 P.2d 243, 249 (Utah 1993) (first omission in original) (emphasis omitted) (citation and internal quotation marks omitted).

¶ 28 The Trustees submitted not one, but two, proposed orders that stated "the absolute opposite" of the court's oral ruling regarding the Smith Property. Both proposed orders said that the Smith Property was properly held in the Trust, directly contrary to the court's oral direction at the May 2009 hearing for the Trustees to "get that Smith [Property] out of [the Trust]" and its subsequent written decision instructing the Trustees to amend the proposed order "to include appropriate language involving the Smith Estate." The Trustees attempt to justify this provision by pointing out that, at the May 2009 hearing, the district court denied the Beneficiaries' request to amend their complaint but nevertheless granted the relief sought in the amended complaint. The Trustees considered these rulings to be unjustifiably inconsistent. This explanation is unavailing. The Trustees' decision to simply resolve the inconsistency in their favor, rather than to raise the inconsistency with the district court and seek further guidance, amounts to a type of self-help at odds with the judicial process. *Cf. Macris v. Sevea Int'l, Inc.*, 2013 UT App 176, ¶ 28, 307 P.3d 625 (stating that parties may not merely disobey orders with which they are dissatisfied but must "assert their challenges through orderly and proper proceedings").

¶ 29 Both proposed orders also awarded the Trustees their attorney fees—$134,000 in the first proposed order and an amount to be determined in the second. The Trustees' explanation for including this award is also unconvincing. The Trustees assert that the fees award resulted from some confusion over the issue that arose because they had filed an attorney fees affidavit requesting an award of $134,000 along with their motion for fees on the day of the May 2009 hearing. The district court, however, called that explanation into question, stating that it "didn't award $134,000 for winning one motion," it "only awarded ... attorney's fees for successfully winning that particular motion," which the court thought was around $9,500.[12]

---

11. The district court never expressly ruled on the motion to enlarge, but it did consider the Beneficiaries' untimely objection when it determined that the Trustees' May 2009 proposed order was inaccurate and when it subsequently awarded bad faith attorney fees to the Beneficiaries against the Trustees.

12. The transcript from the May 2009 hearing indicates that the district court reserved the issue of whether attorney fees ought to be awarded *at all*. At that time, the court explained that the "issue remains" until after the Beneficiaries have "had a chance to look at it and submit any counter affidavits or objections" and the Trustees

Although the court's own statements lend some support to the Trustees' claim that there was confusion about the court's May 2009 ruling on attorney fees, the court plainly had reason to revisit that issue after learning that the Trustees included in the first proposed order the entire $134,000 in attorney fees they had incurred throughout the litigation as opposed to just the fees incurred in defending against the Beneficiaries' third motion to amend. In fact, the order the court ultimately executed—the proposed order submitted by the Beneficiaries—did not award the Trustees fees even for the third motion to amend but instead reserved the issue of attorney fees for future determination.

¶ 30 The court's decision to correct the order despite the untimeliness of the Beneficiaries' objection seems to be a quintessential exercise of the inherent power of the court "to maintain and protect the integrity and dignity of the court, to secure obedience to its rules and process, and to rebuke interference with the conduct of its business." *See Barnard,* 855 P.2d at 249 (citation and internal quotation marks omitted). Therefore, we affirm the district court's rejection of the Smith Property and attorney fees provisions

of the Trustees' proposed order as an appropriate and necessary exercise of the district court's inherent powers without reaching the Trustees' claim that the Beneficiaries' filing of an objection a few days late was inexcusable.[13]

## C. We will not disturb the district court's order that the Trustees pay bad faith attorney fees to the Beneficiaries.

¶ 31 The district court then awarded the Beneficiaries $37,210 in attorney fees incurred in connection with the dispute over the Trustees' proposed order from the May 2009 hearing on the basis that the Trustees had acted in "bad faith" in preparing a written "ruling ... that was 180 degrees different than" the court's oral decision. The Trustees contend that the award was in error because the Beneficiaries failed to establish a basis for an award of bad faith attorney fees and because the court ordered the fees to be paid by the Trustees individually rather than from the Trust.[14]

¶ 32 To prevail on a claim for attorney fees under the bad faith statute, a party must demonstrate that (1) it was the prevail-

have "submit[ted] that" motion for attorney fees for the court's consideration. In light of the court's subsequent statements, however, we will assume that the court's confusion reflected a reasonable uncertainty about whether it had ordered some award of fees to the Trustees at the May 2009 hearing, while clearly leaving open the question of the amount of fees to be awarded.

13. District courts have considerable discretion in granting a motion to enlarge time. *Stoddard v. Smith,* 2001 UT 47, ¶ 22, 27 P.3d 546. Under the circumstances here, which include complications regarding legal representation, well-founded objections to the accuracy of the proposed order, minimal delay in filing the objections (a few days at most), and the Trustees' claim of prejudice being that "the case could have been resolved" in their favor had the court refused the Beneficiaries an extension of time to object, a decision to grant the motion to enlarge seems to fall within that discretion.

14. We have previously held that "[t]he plain language of section 78B–5–825 expressly limits the award of attorney fees to situations where a party prevails with regard to an 'action' ... and a motion—an optional part of a lawsuit—clearly does not equate to an 'action.' " *Dahl v. Harrison,*

2011 UT App 389, ¶ 42, 265 P.3d 139 citing Utah Code Ann. § 78B–5–825 (LexisNexis 2008) (current version at *id.* (LexisNexis 2012)) ("In civil *actions,* the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." (emphasis added)). However, the Trustees have not argued, either in the district court or on appeal, that the bad faith attorney fees section is not applicable because the district court had only considered a motion rather than the entire action. Instead, the Trustees have focused on the sufficiency of the evidentiary basis to support an award of bad faith attorney fees. Accordingly, we confine our analysis to whether there is a factual basis for such an award. *See id.* ¶ 41 (distinguishing the decision in that case from the decision in *Rohan v. Boseman,* 2002 UT App 109, 46 P.3d 753, where bad faith attorney fees were awarded on a motion, on the basis that "[t]he *Rohan* opinion gives no indication that the plaintiff challenged the applicability of the relevant statute based on the fact that the trial court had considered only a motion rather than the entire 'action' " and that "[i]nstead, the plaintiff challenged the evidentiary bases for the trial court's conclusions that the plaintiff's refusal to prosecute and his renewed motion for a continuance showed lack of merit and bad faith").

ing party, (2) the other party's actions were without merit, and (3) those actions were not done in good faith. Utah Code Ann. § 78B–5–825(1) (LexisNexis 2012); *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 7, 122 P.3d 556. A lack of good faith can be found when the circumstances demonstrate that a party does not have "[a]n honest belief in the propriety of the activities in question." *Still Standing Stable*, 2005 UT 46, ¶ 12, 122 P.3d 556. Once a party has made a showing that it is entitled to bad faith attorney fees, the court may award the reasonable attorney fees incurred by the prevailing party in responding to the other party's bad faith conduct. Utah Code Ann. § 78B–5–825(1). *See generally Valcarce v. Fitzgerald*, 961 P.2d 305, 317–18 (Utah 1998) (explaining that to receive attorney fees under the bad faith statute, the prevailing party must demonstrate that the attorney fees are related to the successful claim or defense).

1. The Beneficiaries were the prevailing party.

¶ 33 The Trustees argue that the Beneficiaries were not the prevailing party because "[t]here were dozens of motions" filed during the fifteen years of litigation and the Trustees "prevailed in nearly every instance." The district court's award of attorney fees to the Beneficiaries had a much narrower focus, however. Specifically, the district court found that the Beneficiaries had prevailed in vacating the erroneous order the Trustees submitted, and the court subsequently signed, on the May 2009 hearing. This finding is fully supported by the record.

¶ 34 Due to what appears to be inadvertence, the court signed the Trustees' inaccurate proposed order, with the result that the Beneficiaries had to file a motion to alter or amend judgment to correct the inaccurate rulings on the Smith Property and attorney fees. At a subsequent hearing convened to resolve the problem, the court executed an order submitted by the Beneficiaries, which accurately memorialized the court's May 2009 ruling, effectively resolving the motion to alter or amend judgment in their favor.[15] The Beneficiaries, therefore, prevailed both in bringing to the court's attention the Trustees' misstatements of the court's ruling and in substituting an accurate order for the one the Trustees had supplied and the court had mistakenly signed.

2. The Trustees' order was without merit and brought in bad faith.

¶ 35 The Trustees next contend that the district court's findings that their proposed orders lacked merit and were brought in bad faith were clearly erroneous. The Trustees explain that the court's oral ruling that they must remove the Smith Property from the Trust was inconsistent with the court's denial of the Beneficiaries' motion to amend their complaint to add a claim regarding the Smith Property. They resolved this inconsistency by submitting a proposed order that provided, "[The Beneficiaries' argument] ... that the Smith Estate property is being improperly held in the Warner Family Trust ... is incorrect" because it "was included in the Trust by the Settlors." Specifically, the Trustees explain their decision as being the product of a "good faith belief that the [court's oral ruling] was void" based on the court's inconsistent decisions regarding the motion to amend and the requested relief and its "ambiguous ... comments on the subject [at] the hearing." The Trustees assert that the court clearly denied the motion to amend and that the court's order to remove the Smith Property from the Trust was only in response to a mistaken "afterthought" of the Beneficiaries' counsel. The Trustees claim that the Beneficiaries' counsel's insistence that the Smith Property was being improperly held in the Trust was based on a misunderstanding of the Trust document that, had the Trustees had an "opportunity to brief the matter, put on evidence, conduct discovery, or respond ... in any meaningful way," would have been cleared up. According to the Trustees, had the court known that the Beneficiaries' counsel was

---

15. Because the court "substitute[d] the Order it signed" at the hearing for the order it had previously signed, the Beneficiaries agreed to "with-draw [their] motion" to alter or amend judgment.

confused, it "would not have commented that the Smith Estate Property should be removed from the Trust." The Trustees further argue that because returning the Smith Property to the Trust after its removal would pose difficulties, they "were reluctant to transfer the Smith Property out of the Warner Trust until further clarification was available."

 ¶ 36 The Trustees' explanation itself, however, demonstrates the lack of merit in their actions and underscores the validity of the court's finding of bad faith.[16] The district court ruled that the Smith Property did not belong in the Trust, and it specifically ordered the Trustees to do "whatever you've got to do to get that Smith [Property] out of there," a ruling that it reiterated in response to the errors in the Trustees' original proposed order. And when revisiting its May 2009 ruling in conjunction with the Beneficiaries' motion to alter or amend the inadvertently signed proposed order, the court stated that its ruling regarding the Smith Property was so clear that it did not "know how we could sit here, get a transcript, listen to [the] ruling, and then have an order that comes from the party that was asked to prepare it that is 180 degrees different than what the court ruled."

¶ 37 "Without merit" is a mild description for an action by a party that purports to correct a perceived (or even actual) error in a way that undermines the authority of the court and the integrity of the judicial process. The Trustees' conduct clearly falls within the scope of what is considered to be bad faith: the Trustees could not have held "[a]n honest belief in the propriety of the activities in question." *See Still Standing Stable, LLC v. Allen,* 2005 UT 46, ¶ 12, 122 P.3d 556. The impropriety of the Trustees' decision to unilaterally "correct" the district court's purported error, rather than pursuing readily available procedural alternatives, is apparent. The district court's findings that the Trustees' action was both without merit and in bad faith are therefore well supported.[17] Because the Trustees acted in bad faith by submitting proposed orders for the May 2009 hearing that lacked merit and the Beneficiaries were the prevailing party in correcting the Trustees' errors, the award of attorney fees to the Beneficiaries under the bad faith statute was appropriate.

3. The allocation of fees issue is inadequately briefed.

¶ 38 The Trustees also claim that the attorney fees award was improper because the district court failed to limit the award to fees the Beneficiaries actually incurred in correcting the erroneous order. In support of this claim, the Trustees assert that the Beneficiaries' attorney fees affidavit includes "[d]ozens of . . . items [that] were wholly unrelated to the May [2009] Order" and "[d]ozens more" activities that related to both the May 2009 order and other matters without segregating out the relevant activities from those the Trustees claim to be irrelevant. But nowhere do the Trustees identify any specific billing entries that are not related to the May 2009 order or explain what the proper award should have been if the allegedly unrelated charges had been eliminated. Instead, the Trustees simply state in conclusory fashion that "[t]he evidence did not distinguish the fees incurred in the successful claim from the fees incurred in the unsuccessful claims" and

---

16. A court may not award attorney fees under the bad faith statute unless it determines *"both* that the losing party's action or defense was 'without merit' *and* that it was brought or asserted in bad faith." *Still Standing Stable, LLC v. Allen,* 2005 UT 46, ¶ 7, 122 P.3d 556. Ordinarily, these are separate inquiries. *Id.* ¶¶ 7–10 (explaining that "the mere fact that an action is meritless does not necessarily mean that the action is also brought in bad faith"; instead, there must be independent findings of each (citation and internal quotation marks omitted)). In this case, however, the Trustees' conduct, and their explanation for it, clearly demonstrate both lack of merit and bad faith. Thus, we discuss the two components together for simplicity, but we note that in doing so, we are affirming the district court's conclusion that the evidence independently supports findings of both no merit and bad faith.

17. The proposed order's award of attorney fees to Trustees does not appear to have been a separate basis for the district court's award of bad faith attorney fees to the Beneficiaries. But the misconduct associated with the Smith Property ruling is sufficient to uphold the bad faith finding on its own.

then, without further analysis of the district court's purported error, direct our attention to the twelve-page objection they filed in the district court in which they appear to have disputed sixty-six of the Beneficiaries' claimed charges. In response to that very objection, however, the district court determined that "[t]he attorney fees submitted [by the Beneficiaries] are limited in scope to the grounds for which the Court awarded attorneys' fees in the first place."

¶ 39 To successfully challenge this factual determination on appeal, the Trustees must "demonstrate that ... the trial court's findings are so lacking in support as to be against the clear weight of the evidence." *Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177 (citation and internal quotation marks omitted). The Trustees cannot meet that burden by simply repurposing a pleading filed in the course of the district court dispute, even if we were inclined to allow their appellate page limits to be stretched to encompass their district court objection. *See, e.g., DeBry v. Cascade Enters.*, 879 P.2d 1353, 1360 n. 3 (Utah 1994) (explaining that a party attempting to satisfy its marshaling obligation cannot "enlarge the page limit of their brief" by directing the court to "critical facts" outside the brief). We therefore decline to disturb the court's finding that the Beneficiaries incurred $37,210 in attorney fees related to the Trustees' misstatements in their proposed order from the May 2009 hearing.

¶ 40 In summary, the district court determined that the Beneficiaries had prevailed on all matters related to the May 2009 order; that the Trustees' two proposed orders were without merit because they contained a provision that materially misstated the court's rulings; that the Trustees could not, in good faith, have believed that submitting an order contrary to the court's rulings was appropriate; and that as a result of the Trustees' bad faith in preparing the May 2009 order, the Beneficiaries incurred $37,210 in attorney fees. The Trustees have failed to bear their burden of demonstrating that these findings were clearly erroneous, and we therefore affirm the district court's award of attorney fees to the Beneficiaries. We now consider

whether the court appropriately ordered the Trustees to be individually responsible for those fees.

4. **The district court did not err in requiring the Trustees individually to pay the attorney fees.**

¶ 41 The Trustees assert that the district court erred when it prohibited them from "us[ing] funds from the ... Trust to pay attorneys' fees and costs incurred in connection with the actions the Court has found [the Trustees] took in bad faith in this litigation, including ... the award of [the Beneficiaries'] fees and costs incurred as a result of [the] May [2009] Order." They complain that the court, in effect, required the Trustees to bear the costs themselves despite the fact that the court never "found wrongdoing or a violation of fiduciary duties" on their part. *See generally* Utah Code Ann. § 75–7–1004(2) (LexisNexis Supp.2013) (allowing trustees reimbursement from the trust when they "defend[ ] or prosecute[ ] any proceeding in good faith"). They thus contend that "[t]o assess attorneys' fees against the[m] ... as individuals punishes them for attempting to protect the Trust."

¶ 42 To support their contention, the Trustees point to the fact that they had successfully defeated all the causes of action the Beneficiaries asserted against them, including multiple claims that the Trustees breached their fiduciary obligation. The Trustees again fail to acknowledge that the court's order that they pay the Beneficiaries' attorney fees was limited to those fees incurred in connection with the Trustees' *bad faith* in preparing the order memorializing the court's oral ruling. The district court specifically found that the Trustees "lacked an honest belief in the propriety of the activities in question" when they "prepare[d an order] that is 180 degrees different than what the court ruled." We have already upheld the court's bad faith finding against the Trustees' challenge. *See supra* ¶¶ 35–37. Because trustees are only entitled to reimbursement from the trust when they defend in good faith, *see* Utah Code Ann. § 75–7–1004(2), the court's refusal to allow the Trustees to use Trust funds to pay the fees

incurred due to their bad faith conduct was appropriate.

## II. The District Court's Decision Not To Award Attorney Fees to the Trustees

¶ 43 The Trustees' next contention is that the district court wrongly denied their requests for an award of attorney fees against the Beneficiaries. Generally, a party is entitled to attorney fees only "when authorized by contract or by statute." *Bilanzich v. Lonetti,* 2007 UT 26, ¶ 11, 160 P.3d 1041. The Trustees assert two statutory bases for attorney fees: the bad faith statute and section 1004(1).

¶ 44 As previously noted, a party seeking to collect attorney fees under the bad faith statute must demonstrate, among other things, that the other party's claims were not asserted in good faith. Utah Code Ann. § 78B–5–825(1) (LexisNexis 2012); *Still Standing Stable, LLC v. Allen,* 2005 UT 46, ¶ 7, 122 P.3d 556. Attorney fees can be awarded against a party under section 1004(1) when "justice and equity" so require. Utah Code Ann. § 75–7–1004(1) (LexisNexis Supp.2013) ("In a judicial proceeding involving the administration of a trust, the court may, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.").

¶ 45 The district court denied the Trustees' request for attorney fees under both statutes. Specifically, the court found that the Beneficiaries asserted their claims in good faith, thus precluding an award of fees under the bad faith statute. Regarding the Trustees' claim for attorney fees under the trust statute, the court concluded that section 1004(1) was not applicable because it applies only to "clients [who] ... don't have any

official status" that entitles them to reimbursement of fees from the Trust. And the court reasoned that the Trustees were entitled to have their attorney fees paid by the Trust under subsection (2) of the trust statute, which provides for reimbursement to a trustee of any attorney fees incurred in defending the trust in good faith. *See id.* § 75–7–1004(2) ("If a trustee defends or prosecutes any proceeding in good faith, whether successful or not, the trustee is entitled to receive from the trust the necessary expenses and disbursements, including reasonable attorney's fees, incurred.").

¶ 46 The Trustees challenge both rulings. The Trustees assert that they are entitled to bad faith attorney fees because, contrary to the district court's finding, the Beneficiaries' "conduct clearly qualified as bad faith" where they "knew or should have known that their attempts to amend the pleadings were lacking in propriety" and yet they "repeatedly brought meritless claims ..., with the only apparent purpose being to stall the litigation and hinder the Trustees from exercising their proper authority" under the Trust. The Trustees also contend that the court "misconstrued" the trust statute in determining that section 1004(1) could not apply to a trustee. Specifically, the Trustees assert that the Beneficiaries "should reimburse the Trust" for the attorney fees incurred by the Trustees, and paid for by the Trust, to defend against the Beneficiaries' "frivolous litigation." In this regard, the Trustees seem to equate the "justice and equity" standard with bad faith.[18] Thus, the Trustees appear to rely on two different statutes to support their claim for attorney fees, but they assert the same standard for recovery under each: that the Beneficiaries acted in bad faith.

¶ 47 The district court, however, found that the Beneficiaries had not acted in

---

18. Without any citation to authority or meaningful analysis of the statutory language, the Trustees treat section 1004(1)'s "justice and equity" standard for awarding fees against another party as if it were simply coextensive with the standard for an award based on that party's bad faith under the bad faith statute. The "justice and equity" standard may well include circumstances where one party has acted in bad faith but does not seem to be confined to such circumstances.

*See, e.g., In re United Effort Plan Trust,* 2012 UT 47, ¶ 23, 289 P.3d 408 (discussing circumstances that may invoke the "justice and equity" standard, including among other things, the opposing party's "'act[ing] in bad faith, vexatiously, wantonly, or for oppressive reasons'" (quoting *Atwood v. Atwood,* 2001 OK CIV APP 48, ¶ 47, 25 P.3d 936)). For purposes of this appeal, we will assume that "justice and equity" may include bad faith for purposes of section 1004(1).

bad faith during the course of the litigation, and the Trustees have failed to adequately challenge this finding. *See Still Standing Stable*, 2005 UT 46, ¶ 8, 122 P.3d 556 ("[W]hether ... a claim was brought in bad faith is a question of fact [that] we review ... under a clearly erroneous standard." (alteration and second omission in original) (citation and internal quotation marks omitted)). The Trustees include, in the statement of the case section of their brief, "Facts Regarding [the Beneficiaries'] Bad Faith," along with some relevant record citations. The next five-and-a-half pages only include facts that tend to contradict the court's finding that the Beneficiaries acted in good faith. Moreover, the Trustees do not analyze the court's good faith finding in relationship to those facts in any meaningful way. Rather, they simply conclude that the court was wrong, that there was ample evidence of bad faith, and then, to support that conclusion, they refer us to a lengthy addendum. Our supreme court rejected just such an approach in *DeBry v. Cascade Enterprises*, 879 P.2d 1353 (Utah 1994):

> [The appellants] purport to marshal the evidence ... [by referring to] an appendix to their brief which, together with the pages in the brief, exceeds the page limitation allowed by Rule 24(g) of the Rules of Appellate Procedure. This does not comply with the requirement to marshal evidence. It is improper for counsel to attempt to enlarge the page limit of the brief by placing critical facts in appendices.

*Id.* at 1360 n. 3. Further, the Trustees' appendix, entitled "[Beneficiaries'] Frivolous and Without Merit Accusations Vs. Facts," consists of thirty single-spaced pages describing a wide variety of acts by the Beneficiaries—over a period that extends for twenty-three years—that the Trustees contend demonstrate the Beneficiaries' ill will and bad faith. This litany encompasses not only activities during the course of the litigation but at private family events as well. The addendum provides nary a citation to the record to support its statements of fact, and its conclusions are largely polemical.

¶ 48 This approach is inadequate to carry the burden of challenging a court's finding of fact on appeal because, among other things, the Trustees have violated the page limit rule, relied extensively on facts that have no apparent grounding in the record, and failed to even address the record evidence in support of the district court's finding of good faith. We therefore will not disturb the district court's finding that the Beneficiaries acted in good faith. *See Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 9, 288 P.3d 1046 (explaining that a district court's findings of fact "shall not be set aside unless clearly erroneous," and a "finding is clearly erroneous only if the finding is without adequate evidentiary support" (citations and internal quotation marks omitted)); *see also Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 19, 164 P.3d 384 (explaining that when a party fails to marshal the evidence, it "do[es] so at the risk that the reviewing court will decline, in its discretion, to review the trial court's factual findings"). A finding that a party acted in good faith is necessarily fatal to the other party's claim for bad faith attorney fees. We therefore affirm the district court's decision to deny the Trustees' request for an award of attorney fees against the Beneficiaries under the bad faith statute. And because the Trustees cite only the Beneficiaries' purported bad faith as the basis for an award of attorney fees based on "justice and equity" under section 1004(1) of the trust statute, the district court's decision on this ground must be upheld as well.[19]

---

19. The Trustees also contend that the district court's denial of attorney fees under section 1004(1) on the basis that section 1004(1) does not apply to trustees, who ordinarily are reimbursed under subsection (2) of that statute, was error. The Trustees' position may find some support in a case they did not cite, *In re United Effort Plan Trust*, 2012 UT 47, 289 P.3d 408, where the Utah Supreme Court explained that while subsection (2) "provide[s] the usual mechanism for a trustee's payment for trust administration," subsection (1) "provides an alternative mechanism in unusual circumstances where justice and equity require a different source of payment" than reimbursement from the trust itself. *Id.* ¶ 20. But, because the Trustees have not demonstrated that they are entitled to attorney fees under section 1004(1) in any event, this argument is unavailing.

## III. Cross-appeal

¶ 49 On cross-appeal, the Beneficiaries raise two issues. First, they assert that the district court erroneously granted summary judgment to the Trustees on the Beneficiaries' breach of fiduciary duty claims. Second, they contend that the district court improperly denied their three motions to amend. We affirm both the grant of summary judgment to the Trustees and the denials of the motions to amend, except to the extent that the third motion to amend implicates the Smith Property.

### A. Denial of the Beneficiaries' Motion for Summary Judgment

¶ 50 To succeed in their claim that the district court's summary judgment decision was in error, the Beneficiaries must demonstrate that there are genuine issues of disputed material fact pertaining to the elements of the cause of action. *See* Utah R. Civ. P. 56(c) (explaining that a grant of summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law").

¶ 51 The Beneficiaries have not met their burden on appeal. Nowhere in the two pages they devote to the issue do the Beneficiaries identify the elements of their breach of fiduciary duty claims; rather, they simply list a series of breaches alleged to have been committed by the Trustees without any analysis of the pertinence of those breaches or any discussion of how they create a factual dispute of legal significance when compared with the facts and arguments made by the Trustees in the course of the summary judgment proceeding. The Beneficiaries' cursory and incomplete description of the procedural, factual, and legal circumstances of the summary judgment proceeding thus fails to provide context sufficient for the district court's decision to permit meaningful appellate review. Without such context, the Beneficiaries have not persuaded us that the district court's grant of summary judgment was incorrect. We therefore affirm the summary judgment decision. *See Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903.

### B. Denial of Motions To Amend

¶ 52 The Beneficiaries' second claim on cross-appeal is that the district court improperly denied their three motions to amend: the first in 1999, which sought to add a claim of equitable modification of the Trust to distribute all its assets and dissolve the Trust due to the continuing animosity between the Trustees and the Beneficiaries and Alan Warner's recent loss of employment and consequent financial need (the 1999 motion); the second in 2001, which sought to reform the Trust or partition the Trust property due to the ongoing acrimony between the siblings (the 2001 motion); and the final motion in 2007, which sought primarily to have the Smith Property removed from the Trust but also included claims for distribution of other Trust assets and provision of water to the shared vacation property (the 2007 motion).[20]

¶ 53 Under rule 15 of the Utah Rules of Civil Procedure, a party may seek permission from the court to amend his or her complaint and "leave shall be freely given when justice so requires." Utah R. Civ. P. 15(a). This means that trial courts should "liberally allow amendments," but certain factors, such as untimeliness, futility, prejudice to the other side, and bad faith, "may weigh against the trial court's allowing amendment." *Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 58, 221 P.3d 256 (citations and internal quotation marks omitted). The power to grant leave to amend, therefore, lies within the court's discretion, and we will not disturb the court's decision unless the court has exceeded its discretion and prejudice results. *Id.* ¶¶ 57, 60; *Jones v. Salt Lake City Corp.*, 2003 UT App 355, ¶ 7, 78 P.3d 988 ("We will not disturb the trial court's ruling [on a motion to

---

20. Although the Beneficiaries use different terminology to describe their additional causes of action in each motion to amend, they largely allege the same "misconduct" by the Trustees, including retention of Trust assets in addition to the vacation property and securities contrary to the provisions of the Trust, failure to distribute liquidated Trust assets, interference with Alan Warner's ability to participate as a trustee, and refusal to provide water necessary to the Beneficiaries' enjoyment of the vacation property.

amend] absent an abuse of discretion resulting in prejudice." (citation and internal quotation marks omitted)). Except to the extent that our decision to remand for further proceedings on the removal of the Smith Property implicates the 2007 motion, we affirm the district court's denial of the Beneficiaries' three motions to amend.

1. The 1999 Motion

¶ 54 The district court denied the Beneficiaries' 1999 motion to add a claim of equitable modification because "there is no showing that the proposed amendments to the complaint will legitimately address proper issues in this case." The Beneficiaries now assert that this statement was "not correct." They do not, however, analyze any of the factors that the district court must consider when weighing whether justice requires amendment. *See, e.g., Daniels*, 2009 UT 66, ¶ 58, 221 P.3d 256 (identifying "unjustified" as one of the factors weighing against allowing amendment). Moreover, the court denied the 1999 motion without prejudice, specifically informing the parties that the "issue may be revisited upon presentation of proper evidence justifying amendment." Thus, even if the court ought to have allowed amendment, the Beneficiaries have not demonstrated any prejudice resulting from the denial. *See Jones*, 2003 UT App 355, ¶ 7, 78 P.3d 988 (requiring a showing of prejudice to justify reversing the denial of a motion to amend). Accordingly, we will not disturb the court's decision to deny the 1999 motion.

2. The 2001 Motion

¶ 55 Two years later, the Beneficiaries filed a second motion to amend, in which they asserted claims for reformation of the Trust or partition of the Trust property due to ongoing disputes and acrimony among the siblings. The district court denied this motion because its "clear intent" was "to avoid the discretionary authority of the trustees and other provisions of the trust" without "a proper basis for the amendment." The Ben-

eficiaries argue that denial of the 2001 motion was an abuse of discretion because the court acknowledged that the Trustees' management of the Trust raised "concerns" yet the court refused to address them through judicial intervention. A review of the Beneficiaries' proposed amendments indicates that the additional causes of action are essentially the same as those they attempted to include in 1999. In this regard, they appear to have taken up the district court's invitation, in connection with its denial of the 1999 motion, to refile the motion to amend when they could provide a more robust basis for doing so. Yet, the Beneficiaries again simply identify the alleged mismanagement and the court's concerns and then summarily conclude that the court abused its discretion in denying the motion to amend without analyzing the factors relevant to whether a motion to amend should be allowed. In the absence of briefing sufficient to demonstrate how the court abused its discretion, we must uphold the district court's decision to deny the motion to amend.[21] *See Daniels*, 2009 UT 66, ¶ 58, 221 P.3d 256.

3. The 2007 Motion

¶ 56 Finally, the Beneficiaries take issue with the district court's decision to deny their third motion to amend, seeking to remove certain Trust assets, including the Smith Property, from the Trust and to require the Trustees to provide water to the shared vacation property. As discussed in part I.A. of this opinion, *see supra* ¶¶ 19–25, we are remanding to the district court the issue of whether the 2007 motion ought to be allowed to the extent it requests leave to add a claim to distribute the Smith Property. We affirm the district court's denial of the remainder of the 2007 motion.

¶ 57 The district court denied the motion to amend on a number of grounds, including that the Beneficiaries' new claims did not relate back to the original complaint because they did not arise out of the same conduct as

---

21. Although the district court did not expressly state that its denial of the 2001 motion to amend was without prejudice, it implied that the Beneficiaries had leave to file a new motion to amend in the future when it said that there is "presently no basis" for allowing the relief the Beneficiaries sought. *See generally Jones v. Salt Lake City Corp.*, 2003 UT App 355, ¶ 7, 78 P.3d 988 (requiring a showing of prejudice to justify reversing the denial of a motion to amend).

the original causes of action, were time barred by the statute of limitations and doctrine of laches, and were barred by the doctrines of res judicata and law of the case. Except in one footnote, the Beneficiaries do not address any of these bases for the court's decision; rather, they simply assert that the court "failed to articulate a sufficient basis [for] denying the motion to amend." [22] This is insufficient to satisfy the Beneficiaries' burden of demonstrating error on appeal. *See* Utah R.App. P. 24(a)(9) (requiring the appellant to include "contentions and reasons" for challenging the court ruling "with citations to the authorities ... relied on"); *see also Benns v. Career Serv. Review Office*, 2011 UT App 362, ¶ 2, 264 P.3d 563 (per curiam) ("If an appellant does not challenge the lower court's basis for its judgment, the lower court's determination is placed beyond the reach of further appellate review...."). Accordingly, except as it relates to the Smith Property, we affirm the denial of the 2007 motion to amend.

### CONCLUSION

¶ 58 We affirm the district court's rulings in all but one respect. The district court denied the Beneficiaries' 2007 motion to amend the complaint to add a claim to distribute the Smith Property but then ordered the Trustees to remove the property from the Trust. On that narrow issue, we vacate the district court's order relating to the Smith Property and remand to the district court for further proceedings in accordance with this opinion.

### ON PETITION FOR REHEARING

¶ 59 After issuance of our decision in this case, the Beneficiaries filed a petition for rehearing. We now address two of the issues the Beneficiaries raise: (1) their request for reconsideration of whether their 2006 first amended petition was properly before the district court when it entered its ruling regarding the Smith Property, *see supra* ¶ 7 n. 6 (assuming that the first amended peti-

tion was not before the court when it ordered the Smith Property out of the Trust), and (2) their request for attorney fees incurred in defending the bad faith attorney fees award on appeal.

### I. Reconsideration of the Status Below of the 2006 First Amended Petition

¶ 60 According to the Beneficiaries, the record states that they had permission to file the first amended petition and in the absence of any express written record entry by the district court to the contrary, this court can only assume that the first amended petition was properly before the district court. The Trustees counter that there is no motion for leave to amend the petition in the record, which supports this court's reliance on the Trustees' later representation that the first amended petition had been withdrawn in favor of the third motion to amend. *See supra* ¶ 7 n. 6.

¶ 61 An appellate court is ill equipped to resolve a factual dispute regarding the procedural history of a motion where there is no explicit ruling on the motion in the record. But even if the Beneficiaries are correct that the first amended petition had been duly authorized by the district court prior to the time the court ordered the Smith Property out of the Trust, they do not necessarily prevail on appeal. The district court must still consider the Trustees' claim that other provisions of the Trust permitted retention of the Smith Property. *See supra* ¶¶ 22–23. Accordingly, our order that this issue be remanded for further proceedings stands, with the additional direction to the district court to resolve the dispute regarding whether the 2006 first amended petition was properly before the court, i.e., whether the court had granted leave to file the pertinent amended petition.

### II. Request for Attorney Fees on Appeal

¶ 62 The Beneficiaries have also requested their attorney fees incurred in defending the bad faith attorney fees award on

---

22. Even in the footnote where the Beneficiaries assert that the court's statement that the Trust "money had been spent" did not constitute a proper basis for denying the motion to amend, the Beneficiaries do not provide any authority or explanation for why the statement was insufficient to support the decision to deny the motion. Their argument is merely conclusory.

appeal, "consistent with our settled view that a party who received an award of attorney fees below is entitled to [its] fees on appeal," *Glew v. Ohio Sav. Bank,* 181 P.3d 791, 798 (Utah 2008) (order granting attorney fees on appeal).[23] The Trustees oppose an award of attorney fees on the basis that the Beneficiaries received their attorney fees in the district court pursuant to the bad faith statute and there has been no suggestion that the appeal was made in bad faith. According to the Trustees, an award of fees would "exceed[ ] the purpose of the bad-faith statute" and serve only to punish them for seeking appellate review.

¶ 63 In *Valcarce v. Fitzgerald,* 961 P.2d 305 (Utah 1998), the Utah Supreme Court applied the settled rule to award the prevailing party attorney fees incurred on appeal even though the basis for the award below was the bad faith statute. *Id.* at 319. And our own court has followed *Valcarce* in awarding attorney fees incurred on appeal in similar circumstances. *Livingston Fin., LLC v. Migliore,* 2013 UT App 58, ¶¶ 9, 11, 299 P.3d 620 (per curiam), *cert. granted,* 308 P.3d 536 (Utah July 10, 2013) (No. 20130337); *Dantine v. Shores,* 2011 UT App 392, ¶¶ 6–7, 266 P.3d 188 (per curiam). Accordingly, based on *Valcarce* and our own subsequent precedent, we award the Beneficiaries their attorney fees incurred in defending against the Trustees' appeal of the award of bad faith attorney fees. We remand to the district court for a determination of the amount of fees reasonably incurred and properly allocable to this one issue.

¶ 64 In summary, we decline to reconsider whether the 2006 Amended Petition was before the district court when it ordered the Smith Property out of the Trust but remand the question to the district court to address in conjunction with its consideration of the Trustees' claims that they were permitted to retain the Smith Property in the Trust. On remand, the district court should also determine the amount of fees the Beneficiaries reasonably incurred on appeal to defend the

23. The Beneficiaries requested their attorney fees on appeal in their original appellate briefing. But the request was made at the end of the Beneficiaries' response to the Trustees' conten-

bad faith attorney fees award. The petition for rehearing is otherwise denied.

tions regarding the district court's award of bad faith attorney fees against them, and we overlooked it in our original decision.